OPINION OF THE COURT
George D. Marlow, J.
Defendant moves for an order invalidating and striking down CPL 220.10 (5) (e); 220.30 (3) (b) (vii); and 220.60 to the extent they provide that a sentence of death for the crime of first degree murder pursuant to Penal Law § 125.27 can only be imposed upon a conviction after trial and cannot be imposed as the result of a guilty plea, a plea which can be entered only with the consent of the People and approval of the court. Defendant contends this restriction impermissibly penalizes his exercise of his right to have a trial because it subjects a defendant who seeks a jury trial to the possibility of a death sentence while no such hazard exists should he/she plead guilty.
Defendant also moves for an order invalidating and striking CPL 320.10 which forbids waiver of a jury trial in cases involving charges of first degree murder.
At the outset, the court rejects the People’s contention that defendant lacks standing to challenge these provisions because he has not offered to plead guilty to these charges. Indicted for murder in the first degree, defendant has been brought squarely within the statutory scheme which he argues is facially defective. (Robtoy v Kincheloe, 871 F2d 1478, 1481 [9th Cir 1989].) Indeed, under the cited New York statutes, defendant does not have a unilateral right to enter a plea of guilty without the consent of the District Attorney and court approval. Thus the People’s argument that the defendant *729 would, have to offer to plead guilty in order to challenge these guilty plea provisions is inherently inconsistent.[1]
For the reasons which follow this court rejects the defendant’s contentions.
In United States v Jackson (390 US 570, supra) the Supreme Court held that the Federal Kidnaping Act (18 USC § 1201 [former (a)]), which limited the application of the death penalty to convictions after trial, was unconstitutional because it needlessly chilled a defendant’s right to assert his innocence and to have a trial. The statute at issue in Jackson provided that a violation of the Federal Kidnaping Act was punishable by death if the verdict of the jury so recommended, but it set forth no procedure imposing the death penalty if a defendant pleaded guilty. The Court thus held that such a provision had a chilling effect on the invocation of constitutional rights by needlessly discouraging a defendant from asserting the Fifth Amendment right not to plead guilty and from exercising his/ her Sixth Amendment right to demand a jury trial. Under the Federal Kidnaping Act, "the defendant who abandons the right to contest his guilt before a jury is assured that he cannot be executed; the defendant ingenuous enough to seek a jury acquittal stands forewarned that, if the jury finds him guilty and does not wish to spare his life, he will die.” (United States v Jackson, supra, at 581.)
The feature which distinguishes CPL 220.10 (5) (e) from the Federal Kidnaping Act is that a New York defendant may not plead guilty — and thereby avoid the death penalty — unless the District Attorney and court respectively consent and approve. By requiring this consent and approval for a guilty plea, New York has implemented a policy of giving power to two others— other than a defendant — to decide which defendants will be subjected to the possibility of a death sentence and which defendants will not, i.e., which defendants will be allowed a legal guarantee that they will, at worst, be sentenced to a prison term for life. New York, by this procedural statute, expressed its perceived need to have the prosecutor and the court intervene and prevent a defendant from unilaterally deciding when he/she will avoid the possibility of a death sentence.
By adopting this safeguard for the People through their elected District Attorney to insure that a jury will decide in *730 certain selected cases whether a death sentence is warranted— rather than allowing a defendant to make that decision unilaterally as was the case in Jackson (supra) under the Federal Kidnaping Act — the State has established a way of protecting its policy of controlling when the death penalty may, and when it may not, be imposed.
In mandating this procedure, New York has eliminated the needless encouragement of a defendant’s waivers of his/her Fifth and Sixth Amendment rights — i.e., the infirmity which was targeted and condemned by the Supreme Court in Jackson (supra). Now, in New York, in order to avoid the death penalty, a defendant must strike an agreement with the People (with the court’s approval), a process which New York believes is necessary to assure that certain especially heinous crimes will be considered for death penalty treatment.
This process is nothing more than ordinary plea bargaining, a practice which has not only been repeatedly approved by Federal and New York courts (Bordenkircher v Hayes, 434 US 357; Brady v United States, 397 US 742; Santobello v New York, 404 US 257; People v Avery, 85 NY2d 503; People v Selikoff, 35 NY2d 227, cert denied 419 US 1122), but one which also has been held to be an indispensable and "vital” part of the criminal justice system. As the New York Court of Appeals unanimously observed in People v Seaberg (74 NY2d 1, 7): "Plea bargaining is now established as a vital part of our criminal justice system. Indeed, as we recognized years ago, the volume of criminal prosecutions is so great that if full trials were required in each case New York’s law enforcement system would collapse (see, People v Selikoff, 35 NY2d 227, 233, cert denied 419 US 1122). Certainly nothing has happened since then to cause us to change that observation. The judicial acceptance of plea bargaining, however, rests upon broader policy considerations. In addition to permitting a substantial conservation of prosecutorial and judicial resources, it provides a means where, by mutual concessions, the parties may obtain a prompt resolution of criminal proceedings with all the benefits that enure from final disposition. The plea bargain, or negotiated sentence, enables the parties to avoid the delay and uncertainties of trial and appeal and permits swift and certain punishment of law violators with sentences tailored to the circumstances of the case at hand (see generally, Santobello v New York, 404 US 257, 261; People v Selikoff, 35 NY2d 227, 233-235, supra). The pleading process necessarily includes the surrender of many guaranteed rights but when there is no constitutional *731 or statutory mandate and no public policy prohibiting it, an accused may waive any right which he or she enjoys (Schick v United States, 195 US 65, 72).”
Accordingly, it is reasonable to assert there is not the chilling effect on the defendant’s exercise of his right to a jury trial as was the case in Jackson (supra) because the option to forego a trial rests not only with Dalkeith McIntosh, but with the District Attorney and the court as well.
By requiring both sides to agree on a prison outcome rather than allowing the defendant unilaterally to avoid the risk of death, there is no needless encouragement of guilty pleas, and, therefore, no needless waivers of constitutional rights. The "need” — which must exist for waivers to be valid under Jackson (supra) — is, in the context of this case, "needs” from society’s viewpoint, i.e., the "need” to control which defendants will remain death eligible and which will be assuredly prison bound.
Moreover, the restriction which prohibits a defendant from pleading guilty when the risk of death exists reflects New York’s long-standing public policy against allowing an accused to plead guilty to a crime which is or may be punishable by death. (People v La Barbera, 274 NY 339.) Indeed, prior to 1963 guilty pleas to capital offenses were not allowed in New York. Section 332 of the former Code of Criminal Procedure was amended at that time to provide, in pertinent part, as follows: "There are three kinds of pleas to an indictment:
"1. A plea of guilty.
"2. A plea of not guilty.
"3. A plea of a former judgment of conviction or acquittal of the crime charged, which may be pleaded either with or without the plea of not guilty.
"A conviction shall not be had upon a plea of guilty where the crime charged is or may be punishable by death, except as otherwise provided in sections ten hundred forty-five and twelve hundred fifty of the penal law.”[2]
Section 332 was subsequently amended in 1967 to provide: "[a] conviction shall not be had upon a plea of guilty where the crime charged is murder, except upon consent of the court and district attorney to the entry of such plea. In such case the defendant shall be sentenced to the term of imprisonment for a class A felony prescribed in section 70.00 of the penal law.” Al *732 though the constitutionality of this provision, in light of United States v Jackson (390 US 570, supra), was questioned in People v Black (34 AD2d 999, affd 30 NY2d 593), the Black Court nevertheless sustained the validity of the defendant’s guilty plea, ruling he had failed to establish that it was involuntary, citing Brady v United States (397 US 742, supra). The CPL was thereafter amended in 1974 to forbid all guilty pleas in capital cases (CPL 220.10 [5] [e]), a prohibition which remained in effect until the present statute became effective September 1, 1995.
Further, under the current New York scheme, a defendant, even if found guilty after a jury trial, is not automatically subject to a death sentence. Rather, a separate sentencing proceeding is held, during which defendant may present mitigating factors to a jury.[3]
The Jackson Court recognized that " 'a criminal defendant has [no] absolute right to have his guilty plea accepted by the court.’ ” (United States v Jackson, 390 US, supra, at 584, quoting Lynch v Overholser, 369 US 705, 719.) In People v Chadd (28 Cal 3d 739, 621 P2d 837, cert denied 452 US 931) the court upheld a statute providing that no guilty plea to a capital charge could be entered without consent of defense counsel. The court there recognized that a defendant does not have an absolute right to enter a guilty plea (citing North Carolina v Alford, 400 US 25), and it noted a compelling public policy against permitting the State to assist a defendant in committing suicide. The court recognized the State’s interest in insuring that no capital defendant enters an improvident plea of guilty, a concern obviously recognized and addressed by the New York State Legislature in enacting the present statutory scheme.
Because the District Attorney’s consent is required under New York law, it is an integral part of the plea bargaining process. Unlike under the Federal Kidnaping Act, a New York *733 defendant needs to negotiate an agreement to obtain a prison term, rather than the possibility of a death sentence. In Jackson (supra), the defendant was needlessly encouraged to give up his rights to plead not guilty and to have a jury trial in order to obtain the benefit of a nondeath sentence, since nothing other than the defendant’s waivers of his right to maintain his not guilty plea and his right to a jury trial had to occur. Currently, under New York’s death penalty law, a defendant must bargain for that "benefit”, a time-tested process in which the give and take of rights and benefits on both sides is presumed and has always been considered appropriate. The dynamic of striking an agreement between two equal participants in the justice system is not per se coercive. In Bordenkircher v Hayes (434 US, supra, at 361-362) the Court said, "We have recently had occasion to observe [that] '[w]hatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country’s criminal justice system. Properly administered, they can benefit all concerned’ ” (quoting Black-ledge v Allison, 431 US 63, 71).[4]
The process under New York’s death penalty law is, at least arguably, different from the situation in Jackson (supra) where a defendant charged under the Federal Kidnaping Act could only acquire a substantial sentencing benefit by deciding for himself that to obtain that benefit, he must give up two valuable rights. The unilateral nature of that decision is the component of the statute in Jackson which made the waivers of that defendant’s Fifth and Sixth Amendment rights gratuitous, i.e., "needless”. It was that needless surrender of those valuable rights which the Jackson Court condemned.
The aspect of needlessness has been legislatively removed from the New York statutes. They grant to prosecutors the authority to negotiate with a defendant for a "more favorable” sentence outcome, the essence of the so-called plea bargaining process. In Brady v United States (397 US 742, supra), decided *734 after Jackson (supra), the Court affirmed a guilty plea under the Federal Kidnaping Act finding that plea to have been validly entered, notwithstanding that defendant might have been partially motivated by his fear of the death penalty. As the Court said, "Under this standard, a plea of guilty is not invalid merely because entered to avoid the possibility of a death penalty.” (397 US, supra, at 755.)
Moreover, to suggest that the only constitutionally acceptable process is to require jury trials and pleas of not guilty in all cases takes away all hope from a defendant who chooses to make a reasonable oifer to the prosecution to dispose of a case for otherwise valid reasons (e.g., his realization that he is guilty and the People have the evidence to prove it easily), solely because it happens also to save him from the risk of death. It is difficult for this court to accept the notion that the introduction of the sort of systemic inflexibility urged by this defendant can be considered in defendant’s best interests or fair to the many defendants where a nondeath penalty outcome is appropriate for both sides. "It is this mutuality of advantage that perhaps explains the fact that at present well over three-fourths of the criminal convictions in this country rest on pleas of guilty, a great many of them no doubt motivated at least in part by the hope or assurance of a lesser penalty than might be imposed if there were a guilty verdict after a trial to judge or jury” (Brady v United States, 397 US, supra, at 752).
As this court has previously held in the instant matter, a State statute carries with it a strong presumption of validity, and ordinarily it should not be set aside as unconstitutional unless such a conclusion is established beyond a reasonable doubt because the statute is "arbitrary and confiscatory, or wholly without rational basis.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [b]; People v Smith, 63 NY2d 41; People v Davis, 43 NY2d 17, cert denied 435 US 998; People v Velez, 88 Misc 2d 378.) While the issues raised by the defense are arguable,[5] the conclusion defendant asks this court to draw is, from a constitutional viewpoint, not at all inescapable. Accordingly, this court believes it would be overstepping its bounds, as a trial level Judge, to strike down this statute.
Defendant has further moved for an order declaring CPL 320.10 unconstitutional because it prohibits an accused from *735 waiving a jury trial in capital cases, a position this court rejects.
Article I, § 2 of the New York State Constitution prohibits the waiver of a jury trial in capital cases. Indeed, prior to 1938, the Constitution prohibited the waiver of jury trials in all criminal cases. (People v Page, 88 NY2d 1; People v Cosmo, 205 NY 91.) In People ex rel. Rohrlich v Follette (20 NY2d 297, 300) the Court noted "the right to a trial by jury was so fundamental and so essential to the protection of the defendant’s rights that it could not be waived. Indeed, the present constitutional amendment carries forth that philosophy to the extent that it makes no provision for waiver of a right to trial by jury in capital cases.” The Rohrlich Court went on to say, "[t]he history of our jurisprudence reveals that the fundamental right is the right to a trial by jury. In light of the history of the amendment in question and the procedure outlined to insure that the waiver is properly made, it would be incongruous to hold that a defendant, who has been forced to have his guilt determined by a jury, has been deprived of a fundamental right.” (People ex rel. Rohrlich v Follette, supra, at 301-302.)
Moreover, there is no constitutional right to waive a jury and be tried before a Judge alone. (United States v Jackson, 390 US 570, supra; Singer v United States, 380 US 24.)
As defendant has no recognized Federal constitutional right to a bench trial in a capital case, and since the New York State Constitution specifically forbids a jury trial waiver in this type of case, defendant’s motion to declare CPL 320.10 unconstitutional is denied.
The motion to strike down the aforementioned provisions of the Criminal Procedure Law as unconstitutional is denied in all respects.

. In United, States v Jackson (390 US 570) the Court implicitly found the issue ripe for decision where the indictment had been dismissed prior to plea or trial.

. Both of these sections provide for sentences other than death.

. To the extent that defendant argues that the guilty plea provisions of CPL 220.10 impermissibly deny him his right to present mitigating evidence at a capital sentence hearing, such contention is without merit.
Initially, as noted above, the statutory scheme provides for a bifurcated procedure and a separate sentencing hearing. Nothing contained herein would preclude defendant from in fact admitting guilt in front of the jury at the guilt phase, or in presenting evidence at the sentencing phase of his desire to acknowledge his guilt and forego a trial, an option he can truthfully tell the jury was foreclosed to him under the statute.
The mere fact that the New York statutory scheme requires a guilt phase jury trial in no way deprives a defendant from admitting his responsibility and expressing remorse at both the guilt and sentencing phases.

. Were that not the case, consider a defendant charged, for example, in 10 separate counts with 10 separate incidents of robbery in the first degree, and who is offered a chance to plead guilty — with the People’s consent — to 1 count to satisfy all 10 with a promise of a prison term of only 3 to 6 years instead of the possibility of a 250-year prison term. Would such a defendant be able to argue successfully he was coerced because in order to be guaranteed the lower sentence he had to agree to waive his rights to plead not guilty and to have a jury trial? To answer that question in the affirmative would seem to allow the defendant to take the illogical position that the proposed agreement was so "good” he/she was "coerced” into accepting it.

. And, indeed, there has thus far been disagreement between two New York Trial Judges on this point. (See, People v Hale, 173 Misc 2d 140 [Sup Ct, Kings County 1997] [Tomei, J.]; People v Chinn, NYLJ, Nov. 19, 1996, at 31, col 3 [Mulroy, J.].)