[666 NYS2d 687]

In the Matter of CHARLES J. HYNES, as District Attorney of Kings County, Petitioner, v ALBERT TOMEI, as Justice of the Supreme Court of the State of New York, et al., Respondents.

Second Department, December 22, 1997

### APPEARANCES OF COUNSEL

*Charles J. Hynes, District Attorney* of Kings County, Brooklyn *(Deborah Stevens Modica, Keith Dolan, Jonathan Frank, Howard Getzler, Jacqueline Linares, Philip Semprevivo* and *Marie-Claude Wrenn* of counsel), petitioner *pro se.*

*Hancock & Estabrook, L. L. P.,* Syracuse *(Stewart F. Hancock, Jr.,* of counsel), for Albert Tomei, respondent.

*Capital Defender's Office,* New York City *(Kelley Sharkey, John Youngblood* and *Sonya Zoghlin* of counsel), for Michael Shane Hale, respondent.

*Christopher Dunn, Norman Siegel* and *Arthur N. Eisenberg,* New York City, for New York Civil Liberties Union, *amicus curiae.*

*Richard A. Brown, District Attorney* of Queens County, Kew Gardens *(Gary Fidel, Linda Cantoni, Bruce Seeliger* and *Kathleen B. Hogan* of counsel), for New York State District Attorneys' Association, *amicus curiae.*

## OPINION OF THE COURT

MANGANO, P. J.

In New York, the death sentence may be imposed upon a defendant charged with murder in the first degree only after successive, unanimous jury verdicts are rendered on the issues of guilt and punishment. Various provisions of New York's Criminal Procedure Law (hereinafter CPL) enable a defendant so charged to avoid any possibility of a death sentence by entering into a plea bargain agreement with the People. The question to be answered in this proceeding is whether these plea bargain provisions unconstitutionally penalize a capital defendant's right to a jury trial. We hold that this question must be answered in the negative and that the challenged provisions, CPL 220.10 (5) (e); 220.30 (3) (b) (vii); and 220.60 (2) (a), are constitutional.

### I

The respondent Michael Shane Hale was charged under Kings County indictment No. 8776/96 with the crimes of murder in the first degree (three counts), murder in the second degree (four counts), robbery in the first degree, kidnapping in the first degree, and kidnapping in the second degree. These charges arose out of the murder of Stefan Tanner on October 14, 1995. Subsequent to Hale's arraignment on the indictment, the People timely filed a "notice of intent to seek the death penalty" (hereinafter the notice of intent), should Hale be convicted after a jury trial of the crime of murder in the first degree (CPL 250.40, 400.27).

Thereafter, Hale moved, *inter alia,* for an order declaring that CPL 220.10 (5) (e); 220.30 (3) (b) (vii); and 220.60 (2) (a) (hereinafter the plea bargain provisions) are unconstitutional on their face. As characterized by the respondent Albert Tomei, a Justice of the Supreme Court, Hale argued that the plea bargain provisions, which enable a defendant charged with the capital crime of murder in the first degree to avoid any possibility of a death sentence by entering into a plea bargain

agreement with the People, "effectively penalize[d] his right to a jury trial", by exposing him to the risk of death only when he exercised that right *(People v Hale,* 173 Misc 2d 140, 178).

By order entered July 2, 1997, Justice Tomei granted Hale's motion and, in reliance on the 1968 decision of the United States Supreme Court in *United States v Jackson* (390 US 570), held that the plea bargain provisions were unconstitutional in that they did "not conform to the requirements of the Fifth and Sixth Amendments to the United States Constitution, and corresponding provisions of the New York Constitution" (173 Misc 2d, *supra,* at 185).

The People moved to reargue Justice Tomei's order. On July 18, 1997, while the motion to reargue was *sub judice,* Hale and the People reached a plea bargain agreement based on discussions that had been ongoing during the pendency of the criminal action. The plea bargain agreement provided that Hale would plead guilty, with the People's consent, to murder in the second degree, kidnapping in the second degree, and robbery in the first degree, in exchange for a sentence of 50 years to life imprisonment.

By order entered July 24, 1997, Justice Tomei denied the People's motion to reargue the prior motion which resulted in the order entered July 2, 1997. On that same date, Justice Tomei advised both Hale and the People that, in accordance with his orders, he would not accept their plea bargain agreement unless the People first withdrew their notice of intent.[1]

On August 5, 1997, the People commenced this proceeding pursuant to CPLR article 78 seeking to prohibit Justice Tomei from enforcing so much of his orders as "declared unconstitutional Criminal Procedure Law §§ 220.10 (5) (e), 220.30 (3) (b) (vii), and 220.60 (2) (a) * * * or, in the alternative, [for] a judgment * * * declaring Criminal Procedure Law §§ 220.10 (5) (e), 220.30 (3) (b) (vii), and 220.60 (2) (a) to be constitutional and valid in all respects".

---

1. CPL 250.40 (4) provides that "A notice of intent to seek the death penalty may be withdrawn at any time by a written notice of withdrawal filed with the court and served upon the defendant. Once withdrawn the notice of intent to seek the death penalty may not be refiled". The People refused Justice Tomei's suggestion that they withdraw the notice of intent, since they were of the view that once the notice of intent was withdrawn, the defendant would inevitably choose to withdraw from the plea bargain negotiations and proceed to trial where he would no longer be subject to the possibility of the death sentence. The People have advised this Court that defendants in two other capital cases *(see, People v Whitehurst,* 167 Misc 2d 383; *People v Hodges,* 172 Misc 2d 112) pleaded guilty with the People's consent after the People had filed their notice of intent.

## II

■ It is well settled that "[b]ecause of its extraordinary nature, prohibition is available only where there is a clear legal right, and then only when a court—in cases where judicial authority is challenged—acts or threatens to act without jurisdiction or in excess of its authorized powers" *(Matter of Holtzman v Goldman,* 71 NY2d 564, 569; *see also, Matter of Kaplan v Tomei,* 224 AD2d 530). Furthermore, prohibition is not a proper method to determine the constitutionality of a statute *(see, e.g., Matter of Gold v Gartenstein,* 54 NY2d 627). Accordingly, so much of the People's petition as sought a writ of prohibition is denied. However, the People's alternative request, i.e., that the proceeding be converted into an action for a declaratory judgment, requires separate scrutiny. .

The remedy of a declaratory judgment " 'is available in cases "where a constitutional question is involved or the legality or meaning of a statute is in question and no question of fact is involved" ' " *(Matter of Morgenthau v Erlbaum,* 59 NY2d 143, 150, *cert denied* 464 US 993, quoting *New York Foreign Trade Zone Operators v State Liq. Auth.,* 285 NY 272, 276, quoting *Dun & Bradstreet v City of New York,* 276 NY 198, 206). Further, a declaratory judgment may be used to attack a criminal court's interlocutory ruling when "the * * * ruling [has] an obvious effect extending far beyond the matter pending before it so that it is likely that the issue will arise again with the same result in other cases" *(Matter of Morgenthau v Erlbaum, supra,* at 152). Pursuant to these guidelines and the circumstances presented in the instant proceeding, we deem it appropriate to grant the People's request to convert the proceeding into an action for a declaratory judgment *(see,* CPLR 103 [c]; *see also, Matter of Morgenthau v Roberts,* 65 NY2d 749; *Matter of Penny Lane/ E. Hampton v County of Suffolk,* 191 AD2d 19).

## III

■ With respect to the merits of the instant action, we commence our analysis with the well-settled axiom that "State statutes under scrutiny carry with them a strong presumption of constitutionality, that they will be stricken as unconstitutional only as a last resort and that courts may not substitute their judgment for that of the Legislature as to the wisdom and expediency of the legislation" *(People v Davis,* 43 NY2d 17, 30, *cert denied* 435 US 998).

We now turn to the plea bargain provisions which were declared unconstitutional by Justice Tomei. These provisions

were adopted by chapter 1 of the Laws of 1995 and became effective September 1, 1995.

CPL 220.10 (5) (e), governing kinds of pleas, and CPL 220.30 (3) (b) (vii), governing pleas to part of an indictment or covering other indictments, are worded identically, stating: "A defendant may not enter a plea of guilty to the crime of murder in the first degree as defined in section 125.27 of the penal law; provided, however, that a defendant may enter such a plea with both the permission of the court and the consent of the people when the agreed upon sentence is either life imprisonment without parole or a term of imprisonment for the class A-I felony of murder in the first degree other than a sentence of life imprisonment without parole".

CPL 220.60 (2), governing change of a plea states in relevant part: "A defendant who has entered a plea of not guilty to an indictment may, with both the permission of the court and the consent of the people, withdraw such plea at any time before the rendition of a verdict and enter: (a) a plea of guilty to part of the indictment pursuant to subdivision three or four but subject to the limitation in subdivision five of section 220.10".

In making a declaration of unconstitutionality, Justice Tomei relied primarily on the United States Supreme Court's decision in *United States v Jackson* (390 US 570, *supra* [hereinafter *Jackson*]). In *Jackson* the defendants moved to dismiss a count of an indictment charging them with a violation of the Federal Kidnaping Act (18 USC § 1201 [a]). That statute provided for the possibility of the death penalty on the recommendation of the jury but "sets forth no procedure for imposing the death penalty upon a defendant who * * * pleads guilty" *(United States v Jackson, supra,* at 571). Moreover, in *Jackson* the consent of the prosecutor was not required in order to enter a guilty plea to the kidnapping charge. The District Court held that the death penalty provision of the statute was unconstitutional because it made the risk of death the price for asserting the right to a jury trial. In affirming the District Court, a majority of the United States Supreme Court (Justices White and Black dissenting) held that the "inevitable effect" of the statute was "to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial", and that the "evil in the federal statute is * * * that it needlessly encourages [guilty pleas]" *(United States v Jackson, supra,* at 581, 583 [emphasis omitted]).

The Federal Kidnaping Act invalidated in *Jackson* is distinguishable from New York's death penalty statute in two crucial

respects. In *Jackson* the defendant faced a unitary trial where the jury could recommend a death sentence and was not required to balance aggravating and mitigating factors.[2] In contrast to the Federal Kidnaping Act, the death penalty statute in New York provides for a bifurcated trial where the defendant's guilt, and the sentence to be imposed, are determined separately by the jury. At the guilt phase, the defendant retains all of his or her constitutional protections, e.g., he or she is not compelled to take the witness stand, and the People must prove guilt beyond a reasonable doubt. At the sentencing phase, the defendant has the opportunity to present "any evidence", including his or her own testimony, "relevant to any mitigating factor" set forth in the statute (CPL 400.27 [6], [9]).[3] Of equal, if not greater significance, is that the defendant in *Jackson* had complete control of the plea process, i.e., he could plead guilty as of right to the capital kidnapping charge, and thus could avoid the death penalty by his own unilateral action, an option which the United States Supreme Court recognized would be difficult to resist. In contrast, the plea bargain provisions at bar prohibit a capital defendant from pleading guilty, as of right, to murder in the first degree;[4] rather, they merely grant the People the discretion to enter into a plea bargain agreement with the capital defendant so as to remove the case from the capital punishment track.

It must be further emphasized that the practice of plea bargaining was not at issue in *Jackson*; indeed, it was nearly three years later that the United States Supreme Court stated that plea bargaining was a "highly desirable" and "essential component of the administration of justice" which "[p]roperly administered, is to be encouraged" *(Santobello v New York,* 404 US 257, 260, 261; *see also, Bordenkircher v Hayes,* 434 US 357, 361-362). Moreover, in several subsequent decisions, the

2. This defect was instrumental in the Supreme Court's subsequent decision striking down similar death penalty statutes throughout the country *(see, Furman v Georgia,* 408 US 238).

3. At the sentencing proceeding, the jury may impose, by a unanimous verdict, a sentence of death or a sentence of life imprisonment without parole. The jury may not direct imposition of a sentence of death unless it unanimously finds beyond a reasonable doubt that "aggravating * * * factors substantially outweigh the mitigating factor or factors established" (CPL 400.27 [11] [a]). If the jury fails to reach a unanimous agreement with respect to the sentence, the court "will sentence the defendant to a term of imprisonment with a minimum term of between twenty and twenty-five years and a maximum term of life" (CPL 400.27 [10]).

4. A noncapital defendant in New York may plead guilty to the entire indictment as of right (CPL 220.10 [2]).

United States Supreme Court has made it clear that its holding in *Jackson* does not have the broad application ascribed to it by Justice Tomei.

In *Brady v United States* (397 US 742), the defendant entered a guilty plea to the Federal Kidnaping Act (18 USC § 1201 [a]) and was sentenced in 1959. Thereafter, the defendant sought postjudgment relief, claiming, in reliance on *Jackson*, that the death penalty provision of the kidnapping statute had needlessly encouraged his guilty plea and the waiver of his right to trial because his plea had been motivated by a fear of the death penalty. In rejecting the defendant's argument, Justice White, speaking for a majority of the Court, stated that the defendant had "read far too much into the *Jackson* opinion" and that "a plea of guilty is not invalid merely because entered to avoid the possibility of a death penalty" *(Brady v United States, supra,* at 746, 755). In his dissent in the companion appeal of *Parker v North Carolina* (397 US 790), Justice Brennan criticized the majority for failing to distinguish between "the legislative imposition of a markedly more severe penalty if a defendant asserts his right to a jury trial and a concomitant legislative promise of leniency if he pleads guilty" and the "very different * * * give-and-take negotiation common in plea bargaining between the prosecution and defense, which arguably possess relatively equal bargaining power" *(Parker v North Carolina, supra,* at 809).

In *North Carolina v Alford* (400 US 25), the defendant was indicted for first degree murder, a capital offense. The defendant subsequently entered a guilty plea, with the prosecutor's consent, to second degree murder, which was not punishable by death. The United States Supreme Court rejected the defendant's argument that the plea was invalid under the *Jackson* holding: "We held in *Brady* v. *United States,* 397 U. S. 742 * * * that a plea of guilty which would not have been entered except for the defendant's desire to avoid a possible death penalty and to limit the maximum penalty to life imprisonment or a term of years was not for that reason compelled within the meaning of the Fifth Amendment" *(North Carolina v Alford, supra,* at 31).

Again, in *Corbitt v New Jersey* (439 US 212), the United States Supreme Court stated: "Decisions after *Jackson* sustained practices that, although encouraging guilty pleas, were not 'needless' * * * Subsequent decisions reaffirmed the permissibility of plea bargaining even though 'every such circumstance has a discouraging effect on the defendant's as-

sertion of his trial rights,' because the 'imposition of these difficult choices [is the] inevitable attribute of any legitimate system which tolerates and encourages the negotiation of pleas' " *(Corbitt v New Jersey, supra,* at 219, n 9, quoting *Chaffin v Stynchcombe,* 412 US 17, 31). Finally, the United States Supreme Court has noted that "a prosecutor can * * * offer a plea bargain * * * in any particular case [and] a capital punishment system that did not allow for discretionary acts of leniency 'would be totally alien to our notions of criminal justice' " *(McCleskey v Kemp,* 481 US 279, 312, quoting *Gregg v Georgia,* 428 US 153, 200, n 50).

Consistent with the principles set forth by the United States Supreme Court concerning plea bargaining in capital cases, two lower courts in this State have declared the plea bargain provisions to be constitutional *(see, People v McIntosh,* 173 Misc 2d 727 [Dutchess County Ct, Aug. 4, 1997]; *People v Chinn,* NYLJ, Nov. 19, 1996, at 31, col 3 [Onondaga County Ct]). In addition, appellate courts in sister States have upheld similar statutory provisions *(see, e.g., Ruiz v State,* 275 Ark 410, 630 SW2d 44, *cert denied* 459 US 882; *Conger v Warden,* 89 Nev 263, 510 P2d 1359; *Tennessee v Mann,* 1996 WL 465764 [Tenn Crim App]). The Supreme Court of Arkansas held in *Ruiz v State (supra,* 275 Ark, at 414, 630 SW2d, at 47) that: "[I]t is well settled that a plea bargain is not invalid per se merely because it is induced by fear of receiving the death penalty or because in agreeing to the plea bargain the defendant averts the possibility of receiving the death penalty".

The precedents relied on by Justice Tomei are factually inapposite, i.e., they do not involve statutes which enable capital defendants to plea bargain with the People for a lesser penalty *(see, e.g., People v Michael A. C.,* 27 NY2d 79; *State v Johnson,* 134 NH 570, 595 A2d 498; *Commonwealth v Colon-Cruz,* 393 Mass 150, 470 NE2d 116; *State v Frampton,* 95 Wash 2d 469, 627 P2d 922; *State v Funicello,* 60 NJ 60, 286 A2d 55, *cert denied sub nom. New Jersey v Presha,* 408 US 942; *Spillers v State,* 84 Nev 23, 436 P2d 18).

Finally, counsel for Justice Tomei urges that even if "this Court should conclude * * * that [Justice] Tomei's determination is not compelled by *Jackson,* under the Federal Constitution, then it could—and * * * should—uphold his determination under the New York State Constitution".

We respectfully decline to so hold. This Court has previously observed that "any inquiry into the existence of enhanced protection by the State Constitution * * * [is better left] to the

Court of Appeals * * * as the State's policy-making tribunal" *(People v Keta,* 165 AD2d 172, 178, *revd on other grounds sub nom. People v Scott,* 79 NY2d 474).[5] In any event, the Court of Appeals has given its unequivocal approval to the practice of plea bargaining. In *People v Seaberg* (74 NY2d 1), the Court of Appeals stated: "Plea bargaining is now established as a vital part of our criminal justice system. Indeed, as we recognized years ago, the volume of criminal prosecutions is so great that if full trials were required in each case New York's law enforcement system would collapse *(see, People v Selikoff,* 35 NY2d 227, 233, *cert denied* 419 US 1122). Certainly nothing has happened since then to cause us to change that observation. The judicial acceptance of plea bargaining, however, rests upon broader policy considerations. In addition to permitting a substantial conservation of prosecutorial and judicial resources, it provides a means where, by mutual concessions, the parties may obtain a prompt resolution of criminal proceedings with all the benefits that enure from final disposition. The plea bargain, or negotiated sentence, enables the parties to avoid the delay and uncertainties of trial and appeal and permits swift and certain punishment of law violators with sentences tailored to the circumstances of the case at hand *(see generally, Santobello v New York,* 404 US 257, 261; *People v Selikoff,* 35 NY2d 227, 233-235, *supra).* The pleading process necessarily includes the surrender of many guaranteed rights but when there is no constitutional or statutory mandate and no public policy prohibiting it, an accused may waive any right which he or she enjoys *(Schick v United States,* 195 US 65, 72)" *(People v Seaberg, supra,* at 7).

In light of the foregoing, the motion of the respondent Michael Shane Hale, *inter alia,* to grant the petition in part and deny it in part, or alternatively, to dismiss the proceeding, is denied, the proceeding is converted into an action for a declaratory judgment, and CPL 220.10 (5) (e); 220.30 (3) (b) (vii); and 220.60 (2) (a) are declared to be constitutional. Accordingly the determination of the respondent Tomei to the contrary *(People v Hale,* 173 Misc 2d 140, *supra)* should not be followed.

O'BRIEN, RITTER, THOMPSON and LUCIANO, JJ., concur.

Ordered that the proceeding is converted into an action for a judgment declaring that CPL 220.10 (5) (e); 220.30 (3) (b) (vii); and 220.60 (2) (a) are constitutional; and it is further,

---

5. Although this Court's decision in *People v Keta (supra)* was reversed by the Court of Appeals in *People v Scott (supra),* the reversal was on the merits. The Court of Appeals did not comment on this Court's observation concerning the respective roles of the Appellate Division and the Court of Appeals.

Adjudged that CPL 220.10 (5) (e); 220.30 (3) (b) (vii); and 220.60 (2) (a) are declared to be constitutional; and it is further,

Ordered that the motion by the respondent Michael Shane Hale, *inter alia,* to grant the petition in part and deny it in part, or alternatively, to dismiss the proceeding, is denied.