OPINION OF THE COURT
Anne G. Feldman, J.
Defendant moves that this court find CPL 270.20 (1) (f) unconstitutional on the grounds that permitting pretrial challenges for cause in capital cases precludes formation of a jury which could “properly exercise discretion in determining the appropriate sentence in a capital case” and compromises defendant’s right to a fair and impartial tribunal. Specifically, defendant argues that a jury chosen pursuant to CPL 270.20 (1) (f) would be likely to convict, that such a jury would not represent a fair cross section of the community, and that questioning jurors prior to a guilt determination concerning their death penalty views undermines the presumption of innocence. As a solution defendant proposes the impanelling of separate juries for the guilt and sentencing phases with the inquiry into jurors’ views on the death penalty directed only to the jury determining sentence. As an alternative defendant suggests that the voir dire on jurors’ death penalty views be held only in the event of a first degree murder conviction and that the pretrial voir dire be restricted to determining jurors’ ability to be fair and impartial. Defendant also requests the court to voir dire individual jurors concerning their views on the death penalty outside the presence of other potential and sworn jurors.
A State statute carries with it a strong presumption of constitutionality under both the Federal and State Constitutions (see, Weems v United States, 217 US 349 [1910]; People v Davis, 43 NY2d 17, 30 [1977]). Defendant thus must sustain a heavy burden to overcome this presumption, demonstrating the statute is unconstitutional beyond a reasonable doubt (Fenster v Leary, 20 NY2d 309, 314 [1967]).
CPL 270.20 (1) (f) states in pertinent part that
“[a] challenge for cause * * * may be made * * * on the ground that * * *
“[t]he crime charged may be punishable by death and the prospective juror entertains such conscientious opinions either against or in favor of such punishment as to preclude such juror from rendering an impartial verdict or from properly exercising the discretion conferred upon such juror by law in the determination of a sentence pursuant to [CPL] 400.27.”
*969 The statute thus excludes from the venire two classes of jurors, those so irrevocably opposed and those so irrevocably in favor of the death penalty that they would be unable to follow the law on sentencing. Defendant’s papers characterize the voir dire as aimed at selecting only “death qualified” jurors. In fact, as the prosecution points out, the voir dire process seeks to identify those jurors who can follow the court’s instructions on punishment which would include both life and death qualified jurors.
“[T]he proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment * * * is whether the juror’s views would ‘prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.’ ” (Wainwright v Witt, 469 US 412, 424 [1985].) This standard was applied by the Supreme Court both to death qualification (Lockhart v McCree, 476 US 162 [1986]) and life qualification jurors (Morgan v Illinois, 504 US 719 [1992]) and is consistent with CPL 270.20 (1) (f).
In Lockhart (supra) the Court rejected the same arguments advanced by defendant here. It upheld the constitutionality of an Arkansas statute which required the trial court to determine the “death qualification” of jurors prior to the trial in a capital case. There as here the challenge was based on sociological studies that concluded that a death qualification voir dire prior to trial produced conviction-prone juries. Although the Court found the studies flawed it assumed arguendo their validity and held that even if a death qualified jury might be more conviction prone that factor alone did not impact on defendant’s constitutional right to a fair and impartial jury, absent a showing that the jury in his case was so inclined.
The Court also held in Lockhart (supra) that the constitutional requirement of a fair cross section in a jury panel was not violated by including only “death qualified” jurors on a capital case jury. “[G]roups defined solely in terms of shared attitudes that would prevent or substantially impair members of the group from performing one of their duties as jurors * * * are not ‘distinctive groups’ for fair-cross-section purposes.” (Lockhart v McCree, supra, at 174.) Rather, death qualification was found to “serve the State’s concededly legitimate interest in obtaining a single jury that can properly and impartially ap *970 ply the law to the facts of the case at both the guilt and sentencing phases of a capital trial.” (Supra, at 175-176.)*
Also rejected in Lockhart (supra) was defendant’s argument that death qualification deprives him of an impartial jury. “[A]n impartial jury consists of nothing more than ‘jurors who will conscientiously apply the law and find the facts.’ ” (Lockhart v McCree, supra, at 178, quoting Wainwright v Witt, supra, at 423.) Such is the objective of CPL 270.20 (1) (f).
Defendant’s contention that Lockhart (supra) does not apply to the recently enacted Capital Offender Law (L 1995, ch 1) of this State is based on a strained reading of CPL 400.27 (2). Under that provision a new jury for the sentencing phase of the trial will be impanelled after a conviction “only in extraordinary circumstances and upon a showing of good cause” (CPL 400.27 [2]). Because the two conditions are referred to in the conjunctive it is clear that the Legislature intended to maintain the continuity of the jury between the guilt and sentencing phases except in the most uncommon and unavoidable circumstances. “It is envisioned that in most cases, the jurors who sat at the guilt phase of the trial will remain at the sentencing phase. A juror might be replaced if the juror became grossly unqualified for further service, had legally improper contact during the guilt phase proceedings or was otherwise legally barred from continuing. However, a juror’s reluctance or discomfort with performing the weighty duty of determining whether the death penalty should be imposed should not be grounds for replacing that juror with an alternate juror.” (Assembly Codes Comm Mem, 1995 NY Legis Ann, at 6.) Thus Lockhart is controlling here.
This court declines to reach the issues raised by defendant’s challenge to the statute under the New York State Constitution. The Appellate Division, Second Department, has on two occasions held that the resolution of State constitutional issues should be left to the Court of Appeals (Matter of Hynes v Tomei, 237 AD2d 52; People v Keta, 165 AD2d 172 [2d Dept 1991]). Most recently, in refusing to uphold the Trial Term’s decision in Hale (supra) under the State Constitution, the Appellate Division stated, “We respectfully decline to so hold. This Court has previously observed that ‘any inquiry into the existence of *971 enhanced protection by the State Constitution * * * [is better left] to the Court of Appeals * * * as the State’s policy-making tribunal’ ” (Matter of Hynes v Tomei, supra, at 61 [emphasis supplied]; McKinney’s Cons Laws of NY, Book 1, Statutes § 150). Absent a facially unconstitutional provision this court will not anticipate or usurp the State’s highest Court’s ruling.
The defendant’s suggestion that the death qualification voir dire take place before the sentencing phase is at odds with the holding in Lockhart (supra). No basis has been shown justifying deviation from a constitutional statutory requirement.
Defendant’s alternative suggestion that this court, in the exercise of its discretion, alter the statutory procedure for jury selection is also rejected. The statutory framework only allows for the impanelling of a separate sentencing jury under extraordinary circumstances for good cause shown (CPL 400.27 [2]). Because no such circumstances face this court it has no power to depart from the statute.
Defendant’s final request that jurors be questioned individually and privately concerning their attitudes toward capital punishment appears to invoke the statutory provision authorizing such individualized voir dire (CPL 270.16).

 Defendant’s surmise that a “death qualified” jury might unfairly impact on women and minorities is wholly speculative. In any case, as discussed in People v Hale (173 Misc 2d 140), should there be such a result, underrepresentation of African-Americans and women on the jury would not violate defendant’s Sixth Amendment rights.