*103 OPINION OF THE COURT
Anne G. Feldman, J.
Defendant moves to dismiss the indictment or, in the alternative, to strike the death notice filed by the District Attorney pursuant to CPL 250.40. This motion was previously denied in a bench ruling made prior to jury selection.[1] This opinion explains the grounds for that denial.
Defendant contends that New York’s statutory scheme for selecting candidates for the death penalty violates both due process of law and the constitutional prohibition against cruel and unusual punishment afforded to criminal defendants by both the New York and Federal Constitutions as well as impermissibly delegating legislative authority to the prosecutors of the State’s 62 counties. This is so, he argues, because New York’s statutory scheme provides no guidelines or procedures for the prosecution to follow in selecting those cases in which it will seek the death penalty.
To support his argument that the prosecution’s filing of the death notice against him was the direct result of an arbitrary and capricious selection process defendant relies on a detailed statistical analysis of all murder arrests, first degree murder indictments, and death penalty notices filed in the State between September 1, 1995 and September 30, 1997. Defendant argues that this data which indicates that only 1% of all murder arrests in New York have resulted in the filing of a death notice shows that the New York statutory scheme suffers from the same constitutional infirmity condemned in Furman v Georgia (408 US 238 [1972] ).[2]
Defendant does not dispute that the first degree murder charges contained in the indictment before this court fit squarely within New York’s statutory definition of capital murder (Penal Law § 125.27).[3] His contention is that to pass constitutional muster the legislation must contain specific stan *104 dards and detailed procedures for the charging authorities to follow in determining the cases in which it will invoke the provisions of CPL 250.40 for seeking the death penalty.
There is no basis for this claim. The Legislature is not required to set such standards. To hold otherwise would be to ignore the “long and widely accepted concept of prosecutorial discretion, which derives from the constitutional principle of separation of powers.” (United States v Bland, 472 F2d 1329, 1335 [DC Cir 1972].) It is well settled that prosecutors are given wide latitude to charge offenses under the law. Such decisions are generally beyond judicial review. “Such factors as the strength of the case, the prosecution’s general deterrence value, the Government’s enforcement priorities, and the case’s relationship to the Government’s overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake * * * Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor’s motives and decisionmaking to outside inquiry, and may undermine the prosecutorial effectiveness by revealing the Government’s enforcement policy” (Wayte v United States, 470 US 598, 607 [1985]).
Prosecutors in capital cases are not held to a higher standard of accountability. “[T]he policy considerations behind a prosecutor’s traditionally ‘wide discretion’ suggest the impropriety of our requiring prosecutors to defend their decisions to seek death penalties” (McCleskey v Kemp, 481 US 279, 296 [1987]; Proffitt v Florida, 428 US 242 [1976]; Jurek v Texas, 428 US 262 [1976]).
Defendant makes no charge of discriminatory intent on the part of the prosecution in designating him as death penalty eligible. He alleges only that in the absence of legislatively mandated standards the decisions to file death notices will necessarily be “arbitrary, capricious, and idiosyncratic.” This contention is based only on speculation. The fact that defendant is one of the few of those facing first degree murder indictments to have been selected as a possible candidate for the death penalty does not mean that he has been impermissibly singled out.
Defendant’s reliance upon the Court of Appeals decision in Matter of Johnson v Pataki (91 NY2d 214 [1997]) is misplaced. In that case a District Attorney had announced a blanket policy against seeking the death penalty in any case. In determining whether the Governor had a “rational basis” for issuing an Executive Order removing that District Attorney from the prose *105 cution of a particular case, the Court recognized as legitimate the Governor’s concern that the prosecutor’s announced policy foreclosed him from exercising his statutory discretion in every capital case, thus potentially impacting adversely on Statewide proportionality in the selection of capital cases. Defendant’s speculations about factors District Attorneys in other counties might impermissibly consider in choosing capital cases does not bring this case within the ambit of the concerns recognized by the Court in Matter of Johnson. Granting prosecutors the right to be highly selective in deciding when to seek the death penalty does not mean that when the penalty is sought in a particular case that choice automatically becomes arbitrary and capricious. “Nothing in any of our cases suggests that the decision to afford an individual defendant mercy violates the Constitution.” (Gregg v Georgia, 428 US 153, 199 [1976]; McCleskey v Kemp, supra, at 307.)
There is also no validity to defendant’s argument that in selecting cases in which to seek the death penalty the prosecutor must be limited to the aggravating factors the legislation allows the sentencing body to consider. “To pass constitutional muster, a capital sentencing scheme must ‘genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.’ ” (Lowenfield v Phelps, 484 US 231, 244 [1988].)
The New York statute meets this standard.[4]
Accordingly, defendant’s motion is denied.

. The prosecution opposed the motion on both procedural and substantive grounds. The court rejects the former as unconvincingly technical and is denying the motion on its merits.

. The statistics indicate that of the 1,754 persons arrested for all degrees of murder in New York during a 25-month period, 263 people had been indicted for first degree murder. From among those 263, notice of intent to seek the death penalty has been filed in 19 instances, or in 7.22% of all first degree murder cases.

. In view of the serious nature of the multiple intentional murders with which defendant is charged, the court need not reach his contention that the statute is overbroad in its definition of capital offenses.

. While the highest court of New Jersey did recommend that the prosecution and defense bar agree upon standards under which capital cases are selected it did not find that because the statute lacked such standards it was unconstitutional (State v Koedatich, 112 NJ 225, 548 A2d 939). And, in holding the Massachusetts death penalty statute unconstitutional, the Supreme Court of Massachusetts relied on the State Constitution in finding the absence of standards for selecting candidates for the death penalty to be unconstitutional (District Attorney for Suffolk Dist. v Watson, 381 Mass 648, 411 NE2d 1274). As this court has previously noted, such a policy decision about the New York statute is best left to the Court of Appeals (People v Harris, 176 Misc 2d 967 [Feldman, J.]). In any event, as pointed out by the prosecution, the greater weight of authority among our sister States is that no such guidelines are constitutionally required.