OPINION OF THE COURT
George R. Bartlett III, J.
On May 28, 1997, the Schoharie County Grand Jury, in a single indictment (97-13), charged defendants Donna Arroyo, Cary Wayne McKinley and Daniel Edwards with murder in the first and second degrees, conspiracy in the second degree and criminal possession of a weapon in the second degree in the shooting death of Frank Arroyo on May 12, 1997. Defendant Arroyo was also charged with criminal solicitation in the second degree. Notice of intent to seek the death penalty was filed by the District Attorney against all three defendants, and was withdrawn in the case of Cary McKinley.
The defendants move to strike the notice of intent to seek the death penalty on the grounds that Penal Law § 125.27 and CPL 400.27, as enacted and as applied, constitute cruel and unusual punishment, violate the defendants’ fundamental right to life, and invite the arbitrary and discriminatory, including racially discriminatory, imposition of the death penalty.
The prosecution opposes the motions and argues that it is premature to determine constitutional motions prior to a conviction and actual imposition of the death penalty. The court will entertain the motions prior to guilt determination on the grounds that the defendants have been indicted for capital crimes and the District Attorney has elected to seek the death penalty. This brings the defendants squarely within the capital punishment scheme. Critical trial strategies will necessarily come into play as early as jury selection. Consequently, the motions addressed to constitutional issues, with the exception of the issue of lethal injection, are timely decided prior to jury selection.*
It is well established that State statutes have a strong presumption of constitutionality. (Weems v United States, 217 US 349; People v Smith, 63 NY2d 41; People v Davis, 43 NY2d 17, 30, cert denied 435 US 998.)
*655 The United States Supreme Court has held that the death penalty is not unconstitutional per se. (Gregg v Georgia, 428 US 153.) Furthermore, the Supreme Court upheld a bifurcated procedure which called for the sentencing jury to consider the circumstances of the offense together with the character of the defendant. (Gregg v Georgia, supra, at 191.) New York’s death penalty scheme includes the safeguards approved in Gregg.
The State Constitution infers the constitutionality of capital punishment in that the need for certain special procedures for crimes punishable by death is referred to in several sections of article I. (NY Const, art I, §§ 2, 6.) In Matter of Hynes v Tomei (237 AD2d 52, 60) the Appellate Division, Second Department, stated: “This Court has previously observed that ‘any inquiry into the existence of enhanced protection by the State Constitution * * * [is better left] to the Court of Appeals * * * as the State’s policy-making tribunal’ (People v Keta, 165 AD2d 172, 178, revd on other grounds sub nom. People v Scott, 79 NY2d 474).” Therefore, this court declines to determine whether or not the “cruel and unusual punishment” clause of article I, § 5 prohibits what other sections of article I clearly accommodate, and provides constitutional protections greater than those required by the United States Constitution.
As set forth in this court’s decision on motion A-16 dated August 12, 1998, the evidence presented to the Grand Jury supports the indictments for the crimes as charged. This court’s decision on motion A-25 dated September 29, 1998 determined that the aggravating circumstance included in Penal Law § 125.27 (1) (a) (vi), murder “for hire”, satisfies the constitutional requirement that a capital punishment scheme narrows the class of people eligible for the death penalty and reasonably justifies the imposition of a more severe penalty on the defendant as opposed to others convicted of murder. (People v Arroyo, Schoharie County Ct, Sept. 29, 1998, Bartlett J., citing Lowenfield v Phelps, 484 US 231, 244.) Prosecutors are given wide discretion in deciding when to seek the death penalty. (McCleskey v Kemp, 481 US 279, 296; Gregg v Georgia, 428 US 153, 199, supra; Bordenkircher v Hayes, 434 US 357.) The defendants have made no showing of prosecutorial conduct indicating arbitrary prosecution or that the prosecutor’s decision to seek the death penalty was improperly or illegally made.
Furthermore, this court’s decision on motion A-25 has determined that CPL 400.27 ensures that a jury will not make an arbitrary or discriminatory decision to impose the death penalty.
*656 Defendant Edwards argues that the death penalty has been sought in his case because he is white and the prosecutor needs white conviction statistics to balance the number of black convictions. Defendant Arroyo argues that the death penalty is sought against her because she is a woman and conviction statistics for women are needed to balance those for men; and also, that the death penalty is sought most frequently in cases in which a white person, in this case a white Hispanic, is the victim. The defendants’ statistical analysis of death cases to date is unpersuasive on the issue of discriminatory enforcement of the death penalty statutes; the appropriateness of the penalty must be determined in each case on its own merits. (McCleskey v Kemp, 753 F2d 877, 893-895, affd, 481 US 279, supra.) Considering that the conduct underlying the crimes charged satisfy the statutory criteria of Penal Law § 125.27 (1) (a) (vi), and the lack of specific abuse on the part of the prosecutor in electing to seek the death penalty, the court finds no discriminatory enforcement in this prosecution on the basis of race, gender or any other impermissible basis of the defendants or of the victim.
However, it should be noted that New York’s capital punishment scheme ensures a standard and uniform application by including an extra protection for the defendant: review of the defendant’s case in the context of all other similar cases. Whenever a sentence of death is imposed, the Court of Appeals is mandated to review the judgment and sentence; the scope of review includes determining whether a death sentence was imposed under the influence of passion, prejudice, or any other arbitrary or legally impermissible factor including the race of the defendant or a victim of the crime; and whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and of the defendant. (CPL 470.30 [3].)
The court has considered the defendants’ argument that the death penalty runs counter to prevailing societal standards of decency and finds this argument erroneous in light of the United States Supreme Court acceptance of capital punishment (see, citations above) and in light of this State’s significant and persistent history of death penalty legislation. (See, People v Hale, 173 Misc 2d 140, 168-170.)
All other arguments posed by defendant are lacking in merit.
See also, People v Harris (177 Misc 2d 102 [Sup Ct, Kings County]); People v Shulman (NYLJ, Sept. 26, 1997, at 35, col *657 5); People v Chinn (NYLJ, Nov. 19, 1996, at 31, col 3); People v Hale (supra); People v McIntosh (Dutchess County Ct, Jan. 20, 1998, Marlow, J.).

 The court reserves decision on motions A-52 and E XXV related to lethal injection as the manner of inducing death. The issue of lethal injection is not germane to any trial or sentencing proceedings. Consequently, that issue is not ripe until such time as a sentence of death may be imposed.