OPINION OF THE COURT
Anne G. Feldman, J.
In this motion, denominated number 21, defendant moves to strike the death notice filed pursuant to CPL 250.40 on the grounds that New York’s statutory scheme for qualifying a jury in a capital case is unconstitutional. In the alternative defendant moves this court for a variety of orders which would limit the timing and nature of the voir dire conducted pursuant to CPL 270.16.[1]
Defendant’s constitutional challenge is based on claims that the capital jury qualification process under New York law violates his rights to an impartial jury, to due process and to a jury comprised of a fair cross section of the community. In People v Harris (176 Misc 2d 967), this court rejected similar challenges to the constitutionality of CPL 270.20 (1) (f).[2] Relying on Lockhart v McCree (476 US 162 [1986]), this court upheld the constitutionality of CPL 270.20 (1) (f) as serving the State’s legitimate interest in obtaining a single jury that could fairly and impartially decide both the guilt and penalty phases of a capital trial. To achieve that end, juror qualification interviews are properly conducted before the guilt phase and a separate jury for the penalty phase may only be impaneled “in extraordinary circumstances and upon a showing of good cause.” (CPL 400.27 [2].)
In the instant case defendant fails to meet his burden of proving beyond a reasonable doubt that New York’s juror qualification process is unconstitutional. Furthermore he offers no new arguments which persuade this court to depart from its previous decision in Harris.
Defendant also contends that jurors with religious or conscientious qualms about capital punishment constitute a cogniz *837 able and distinct group warranting protection from discrimination under Batson v Kentucky (476 US 79 [1986]).
Defendant’s arguments are unpersuasive. A cognizable group “is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or applied.” (Castaneda v Partida, 430 US 482, 494 [1977].) The group must be defined by a limiting factor, by a common thread of attitude or experience and by a community of interests that cannot be represented if the group is excluded from the selection process (Murchu v United States, 926 F2d 50, 54 [1st Cir 1991]; Willis v Kemp, 838 F2d 1510, 1514 [11th Cir 1988]).
This court fails to recognize such characteristics among individuals expressing qualms about capital punishment. A shared attitude of conscientious objection to the death penalty is insufficient alone to create the kernel of a cognizable group. No common limiting factor has been shown to unify such individuals into a group; nor has any societal discrimination of such a group been demonstrated.
Lockhart v McCree (supra) provides an instructive analogy. In Lockhart the Court held that individuals with scruples against the death penalty did not constitute a “distinctive” group for fair cross-section purposes (id., at 174). Moreover, their exclusion from jury service in a capital case was not arbitrary but rather designed to further the State’s interest in obtaining a single, impartial jury.
The requirements that must be met when challenging the jury selection process are comparable under equal protection and fair cross-section analysis (Ramseur v Beyer, 983 F2d 1215, 1230, cert denied 508 US 947 [1993]). “To prove either claim, a defendant must first identify a constitutionally cognizable group, that is, a group capable of being singled out for discriminatory treatment.” (Id.) Thus, because the requirements for the two threshold groups are roughly equivalent the Lockhart analysis of a “distinctive” group is applicable here.
Defendant also urges this court to interpret the New York statute as adopting a two-tier standard of review when deciding challenges for cause pursuant to CPL 270.20 (1) (f). Defendant contends that the Legislature established a strict standard that allows cause challenges only for those jurors whose views “preclude” them from being impartial or “preclude” them from exercising their discretion to vote against the death penalty pursuant to CPL 400.27. Defendant argues that the Legislature’s choice of the word “preclude” reflects its intent to impose the absolute standard set forth in Witherspoon v Illinois *838 (391 US 510 [1968]) rather than the prevailing more flexible standard of “preclude or substantially impair” as enunciated in Wainwright v Witt (469 US 412, 433 [1985]). Defendant buttresses his argument by contending that the discretion given sentencing jurors under CPL 270.20 (1) (f) is comparable to that given juries by the Illinois statute addressed by the Court in Witherspoon. Consequently, because New York cannot afford a defendant less protection than that provided by Federal constitutional law, defendant argues that the Legislature intended the prosecution’s challenges to be dictated by the plain meaning of CPL 270.20 (1) (f) while the defense challenges must be resolved according to the more lenient standard in Witt.
In Witherspoon v Illinois (supra, at 522-523, n 21), the Court stated that only those prospective jurors could be excluded for cause who made it “unmistakably clear * * * that they would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them” or whose “attitude toward the death penalty would prevent them from making an impartial decision as to the defendant’s guilt.” The Court concluded that “[t]he most that can be demanded of a venireman in this regard is that he be willing to consider all of the penalties provided by state law and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings.” (Id., at 522, n 21; emphasis supplied.)
Seventeen years later in Wainwright v Witt (supra, at 424, quoting Adams v Texas, 448 US 38, 45 [1980]), the Court held that the proper standard by which a prospective juror may be challenged and excluded for cause is “whether the juror’s views would ‘prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.’ ” The Court thereby clarified its decision in Witherspoon, dispensing with Witherspoon’s reference to “automatic” decision making and the need to prove a juror’s bias with “unmistakable clarity” (Witt, at 424). This, the Court reasoned, “is because determinations of juror [views] cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism” (id.). However, the Court did not explicitly overrule Witherspoon, noting that the standard found therein was dicta embodied in footnotes rather than in the main body of text (id., at 422).
*839 The Court further concluded that the language of Witherspoon's footnote 21 was inapplicable to present-day capital sentencing juries. Witherspoon had been decided before the landmark decisions in Furman v Georgia (408 US 238 [1972]) and Gregg v Georgia (428 US 153 [1976]). As a result of Fur-man and Gregg and their progeny, States no longer were permitted to leave the decision to impose the death penalty solely to the untrammeled discretion of a jury (Witt, at 421). Specifically, in Gregg the Court held that the death penalty may be constitutionally imposed if the sentencing body’s “discretion [is] suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action” (Gregg, at 189). At a minimum the capital punishment scheme must limit the sentencing body’s discretion by narrowing the class of defendants eligible for the death penalty through the codification and proof of aggravating circumstances (id., at 196). Thus the determination of a juror’s bias was no longer a simple matter (Witt, at 422).
Contrary to defendant’s contention, a keen distinction can be drawn between the unlimited discretion available to the jury in Witherspoon and that instilled in a New York sentencing jury. That distinction rests on the context within which the discretion is exercised. The Witherspoon jury was vested with complete unfettered discretion in reaching a sentence. Only those jurors “who would never vote for a death sentence or who would not impartially judge guilt” were properly excluded. (Witt, at 421-422.) Under the New York statute the jury’s discretion is much more circumscribed. Only after the jury has found defendant guilty of a crime enumerated in Penal Law § 125.27 and has reviewed the mitigating circumstances (CPL 400.27 [9]), and unanimously found that the aggravating circumstances substantially outweigh any mitigating circumstances (CPL 400.27 [11] [a]), are the jurors given what defendant characterizes as “unbridled discretion” to exercise their “mercy function” in determining whether a sentence of death should be imposed (CPL 400.27 [11] [a]).
The conditions that formed the predicate for Witherspoon no longer exist. Equating the exercise of discretion of the juries pre- and post-Furman (supra) as a basis for concluding that the Legislature intended to impose the same guiding standard for cause challenges is irrational. To conclude that the Legislature modeled CPL 270.20 (1) (f) on Witherspoon requires the assumption that decades of constitutional controversies were overlooked.
*840 A strong presumption exists that a duly enacted statutory provision is valid and constitutional and it must be so construed if a rational basis can be found to do so (McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [c]). To that end a literal interpretation of specific words is secondary to maintaining the viability of the particular provision (id.). The premise is equally strong that when the Legislature enacts a statutory provision a primary goal is to conform to the prevailing constitutional standards. Consequently, in drafting CPL 270.20 (1) (f), the Legislature must have intended to meet the Witt standard rather than the outmoded inapplicable standard of Witherspoon. Moreover, had the Legislature intended to craft a dual standard for cause challenges it had ample opportunity to do so.[3] The conclusion is therefore inescapable that the Legislature never intended or even contemplated the creation of separate standards for asserting challenges for cause.
Accordingly, this court will resolve challenges for cause on an even plane for both parties.
Finally, the court grants defendant’s application for an opportunity to seek to rehabilitate prospective jurors who appear initially to be irrevocably opposed to imposing the death penalty.

. Those portions of the motion which seek in limine rulings restricting the scope of the prosecutor’s voir dire are best dealt with in the context of the actual questioning of potential jurors.

. CPL 270.20 (1) (f) states in pertinent part:
“1. A challenge for cause * * * may be made only on the ground that * * *
“(f) The crime charged may be punishable by death and the prospective juror entertains such conscientious opinions either against or in favor of such punishment as to preclude such juror from rendering an impartial verdict or from properly exercising the discretion conferred upon such juror by law in the determination of a sentence pursuant to section 400.27.”

. See CPL 400.27 (6) wherein the Legislature in outlining the procedure for the sentencing proceeding specifically differentiates between the parties imposing heavier burdens of proof on the prosecution and permitting wider latitude to the defense.