**UNITED STATES of America,**

v.

**Joseph A. WILSON, Defendant.**

**No. 95 Crim. 493 (LAK).**

United States District Court,
S.D. New York.

Oct. 25, 1995.

---

Roman Dahmer, Assistant United States Attorney, Mary Jo White, United States Attorney, for the United States.

Tracy L. Eadie Gaffey, Associate Attorney, Leonard F. Joy, Attorney-in-Charge Federal Defender Division, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

The defendant in this case is charged with uttering a false, forged and counterfeited Japanese government certificate in the amount of ¥ 300 billion in violation of 18 U.S.C. § 479 and 2. He moves to suppress statements he made to agents of the Federal Bureau of Investigation ("FBI") in an interview that took place prior to his formal arrest. The Court has conducted an evidentiary hearing and now denies the motion.

### Facts

In December 1994, the FBI was informed that the defendant intended to deposit a Japanese certificate to an account maintained by a securities broker-dealer at the National Stock Clearing Corporation ("NSCC"). Special Agent Jennifer Keenan, who apparently had information suggesting that the certificate was not genuine, made arrangements to act in an undercover capacity at NSCC.

On December 9, 1994, Agent Keenan, in her undercover role, spoke to the defendant twice by telephone and made a tentative appointment for the defendant to present the certificate at NSCC on the following Monday, December 12. In consequence, Agent Keenan was at the NSCC when the defendant and a Mr. Vaillancourt arrived together at about 12:30 p.m.

When the defendant arrived at the NSCC "window," which resembles a bank teller's station and to which people deliver securities, he asked for Agent Keenan (under her undercover pseudonym). She came to the window, where the defendant identified himself and Mr. Vaillancourt and furnished Agent Keenan with the certificate and a number of other documents including his passport, which he used to establish his identity. Agent Keenan took the documents, told defendant that she had to photocopy them, and left the window. Moments later, she and two other agents went into the customer area in which the defendant and Mr. Vaillancourt were waiting, showed their credentials, told the two men that the certificate was "fake," and asked if they would consent to be interviewed. The two men agreed.[1]

At approximately that point, an employee of Depository Trust Company ("DTC") appeared in the area to escort the agents, the defendant and Mr. Vaillancourt to a confer-

---

1. The agents were dressed in business attire and did not display weapons or handcuffs or raise their voices.

ence room on a higher floor of the building, which Agent Keenan previously had arranged to use. The DTC employee led the group through a public corridor to a public elevator and thence to the conference room.

Once in the conference room, the agents explained to Messrs. Wilson and Vaillancourt that they wished to conduct separate interviews. No objection was raised, and one agent took Vaillancourt to a kitchen area near the conference room while Agent Keenan and another agent remained in the conference room with the defendant. Agent Keenan thereupon conducted an interview that lasted approximately two hours during which no weapons or handcuffs were displayed, and Wilson never was told that he was under arrest. No threats were made or voices raised. At one point, Agent Keenan took Wilson to the kitchen area where Vaillancourt was speaking to the other agent, left Wilson with the other agent, and returned to the conference room with Vaillancourt for a time. Later on, she returned Vaillancourt to the kitchen area and returned to the conference room with Wilson. While Wilson was free to move around throughout, he always was in the company of one or two agents. At about the mid-point of the interview,[2] Agent Keenan accused Wilson of lying and, in substance, of having committed a crime. She suggested to him that his best interests would be served by admitting his guilt and cooperating. She told him also that he and Vaillancourt were subjects of the investigation and that it would be in his best interests not to speak to Vaillancourt about the matter.

At the conclusion of the interview, Agent Keenan served Wilson with a grand jury subpoena, which was returnable that day, December 12, 1994, and required the production of documents. Wilson said that it would be difficult for him to comply on that day and asked for an extension. Agent Keenan crossed out the return date and inserted December 20 as a new return date. Wilson then or shortly thereafter left.

No *Miranda* warnings were given at any point. At no point was Wilson told that he was under arrest or that he was not free to leave, patted down or frisked. Nor was he ever placed in locked premises or taken to any location under the control of the government. At no point did he seek or ask to leave.

### Discussion

■ *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), requires the suppression of any statements made by a defendant while he is in custody unless the defendant first has been warned concerning his legal rights. The only question presented by the defendant's motion to suppress therefore is whether he was in custody at any point during the interview of December 12, 1994.

■ It would be naive to suggest that there is not a hint, however slight, of threat in almost any circumstance in which law enforcement personnel seek to question a citizen. But the cases make crystal clear that far more than this is required in order to transform a perfectly appropriate request for information into a custodial interrogation. The standard governing this determination is clear. It "(a) asks whether a reasonable person would have understood herself to be 'subjected to restraints comparable to those associated with a formal arrest,' and (b) 'focuses upon the presence or absence of affirmative indications that the defendant was not free to leave.' " *United States v. Kirsh*, 54 F.3d 1062, 1067 (2d Cir.1995) quoting *United States v. Mitchell*, 966 F.2d 92, 98 (2nd Cir. 1992) (internal quotes omitted). The fundamental question is whether the agents acted in a manner that conveyed "the message that they would not [have] permit[ted] the accused to leave." *Campaneria v. Reid*, 891 F.2d 1014, 1021 n. 1 (2d Cir.1989), *cert. denied*, 499 U.S. 949, 111 S.Ct. 1419, 113 L.Ed.2d 471 (1991). The standard, moreover, is an objective one. *E.g., Mitchell*, 966 F.2d at 98.

---

**2.** The Court finds, crediting Agent Keenan's testimony, that the Agent's memorandum of the interview (Gaffey Ex. C) relates what was said at the interview in the order in which the events took place and that the accusation of lying took place in the discussion of Wilson's prior interview with another FBI agent, which is referred to at page 4 of the memorandum.

In this case, the agents identified themselves to Wilson in a public place. Nothing smacking of force or restraint was used or displayed. Wilson freely agreed to an interview, which was conducted in an ordinary business conference room in a commercial firm, not even on government premises. Wilson was not searched, frisked or patted down. His briefcase was not taken from him or its contents inspected. He was not told that he was under arrest or that he was not free to leave. The circumstances here thus were far less favorable to the position of the defendant than in *United States v. Kirsteins,* 906 F.2d 919 (2d Cir.1990), where the defendant, an immigrant, was questioned under oath behind locked doors in the United States Attorney's office, but the Second Circuit nonetheless reversed an order of suppression.

The only factor present here that gives the Court pause is Agent Keenan's accusation, made during the interview, that Wilson was lying and that he in fact was guilty of a crime. In other circumstances, such an assertion might tip the balance in favor of suppression. In view of the facts outlined above—particularly that the interview was conducted during ordinary business hours in commercial, as opposed to government, premises and that there was no overt or explicit suggestion of compulsion—this Court is satisfied that a reasonable person in defendant's position would have concluded that he was free to leave.[3] *Cf. Beckwith v. United States,* 425 U.S. 341, 342–43, 96 S.Ct. 1612, 1614–15, 48 L.Ed.2d 1 (1976).

Accordingly, the motion to suppress is denied.

The foregoing constitute the Court's findings of fact and conclusions of law.

SO ORDERED.

---

3. While the Court would reach the same result in any case, it finds that Wilson is a lawyer and that a reasonable lawyer in his circumstances certainly would have understood that this was not a custodial interrogation.