[682 NYS2d 714]

In the Matter of CITY OF NEW YORK, Respondent, v BRIAN J. WING, as Commissioner of the New York State Department of Social Services, et al., Appellants.

Third Department, December 30, 1998

APPEARANCES OF COUNSEL

*Michael D. Hess, Corporation Counsel* of New York City (*Lawrence M. Martin* of counsel), for appellants.

*Dennis C. Vacco, Attorney-General,* Albany (*Daniel Smirlock* of counsel), for respondent.

### OPINION OF THE COURT

CARPINELLO, J.

Pursuant to the Federal Adoption Assistance and Child Welfare Act of 1980 (*see,* 42 USC §§ 670-679), the State is entitled to be reimbursed with Federal funds for the foster care expenses of "[q]ualifying children" (42 USC § 672 [a]), which it then distributes to local social services districts, such as petitioner (*see,* Social Services Law § 153 *et seq.*). The present dispute has its genesis in a 1988 audit conducted by the United States Department of Health and Human Services (hereinafter HHS) of foster care expenditures incurred by petitioner between October 1983 and September 1985. Out of a statistical sample of 300 cases, the auditors determined that payments made in 202 of these cases should be disallowed for failing to meet various Federal eligibility requirements. On December 27, 1990, after extrapolating this case sample to the universe of foster care cases from which the sample was drawn and making adjustments based on submissions by respondent State Department of Social Services (hereinafter DSS), the number of children found to be ineligible was reduced to 186. Accordingly, HHS disallowed $92,115,289 in prior payments and sought recoupment of this sum from DSS. This figure was

comprised of $64,123,732 in foster care maintenance payments and $27,991,567 in associated administrative costs.[1]

A two-step appeal process to the HHS Departmental Appeals Board (hereinafter DAB) ensued. Following completion of the first phase, which addressed the audit methodology, DAB upheld the entire disallowance for foster care maintenance payments in a decision dated September 30, 1992. The second phase, which addressed the propriety of the specific disallowances, proceeded in an informal manner during which DSS submitted offers of proof contesting 111 out of the 186 disallowed cases. A Congressional moratorium precluded HHS from responding to these submissions for over two years.

On the 75 unchallenged cases, HHS recouped $31,200,405 from DSS in April 1995; this sum included $20,748,405 in foster care maintenance payments and $10,452,000 in interest (*see*, 45 CFR 30.13, 30.14). With respect to the remaining cases, HHS reviewed DSS' documentation and reduced the disallowance to $61,967,103 in August 1995. Ultimately, on December 16, 1996, HHS and DSS entered into a settlement agreement with respect to these cases pursuant to which HHS recouped $42,899,429 from DSS. Of this figure, $32,723,816 was attributable to foster care maintenance payments and administrative costs and $10,175,613 was attributable to interest.

By letter dated December 30, 1996, petitioner was informed by DSS that it was being held responsible for the entire $74,099,834 Federal disallowance. Petitioner commenced this combined CPLR article 78 proceeding and declaratory judgment action asserting, *inter alia*, that DSS can only recoup one half of the $53,472,221 Federal disallowance and none of the $20,627,613 in interest. Supreme Court agreed and this appeal by respondents ensued.

Respondents contend that Social Services Law § 153-i precludes State reimbursement of the Federal disallowance and requires DSS "to simply pass[ ] [the] final federal disallowance on to the Petitioner". This statute, effective July 1, 1995, specifically limited a social services district's reimbursement for foster care expenditures to the amount of its fiscal year block grant allocation (*see*, Social Services Law § 153-i [1] [a]). However, for the years in which the expenditures at issue were incurred (1983 to 1985), the statutory scheme then in existence

---

1. Try as we might, we cannot reconcile the figures contained in the December 27, 1990 HHS letter: $64,123,732 + $27,991,567 = $92,115,*299* (not $92,115,*289*).

provided that DSS would reimburse social services districts for one half of all foster care expenditures not reimbursed by the Federal Government (*see*, Social Services Law § 153 [1] [d], [e]). Because the settlement between HHS and DSS was entered into nearly seventeen months after Social Services Law § 153-i became effective, respondents claim that it applies to the Federal disallowance at issue and precludes State reimbursement to petitioner.[2]

In our view, any application of Social Services Law § 153-i to the subject disallowance would constitute an impermissible retroactive application of the statute; accordingly, we find that DSS' determination, predicated on the application of this statute, is arbitrary and capricious (*see, e.g, Matter of Jennings v New York State Off. of Mental Health*, 90 NY2d 227, 239). Clearly, that retroactive operation of a statute is not favored and a statute will not be given such construction unless the language expressly, or by necessary implication, requires it (*see, Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 584). Social Services Law § 153-i was not a "remedial" piece of legislation nor one governing a purely procedural matter such that it should be applied retroactively (*see, Matter of OnBank & Trust Co.*, 90 NY2d 725, 730). Rather, the statute encompasses a change—indeed, a significant change—in State fiscal policy insofar as it relates to reimbursement for foster care expenditures in that it caps a social services district's reimbursement for foster care expenditures to the amount of its fiscal year grant allocation. In the event that the expenditures in a particular fiscal year exceed its block grant, a social services district can either absorb the loss or charge it against the next fiscal year's block grant (*see*, Social Services Law § 153-i [11]).

Resolution of the essential issue in this case—which governmental entity should bear the cost of the 1988 Federal audit resulting in the 1990 disallowance for expenditures incurred in 1983 through 1985, a period predating the amendment to the statutory scheme by some 12 years—should be governed by the policy of the State as set forth in Social Services Law § 153 (1)

---

2. Even if Social Services Law § 153-i should be applied to the December 1996 agreement settling that part of the 1990 disallowance pertaining to the 111 disputed cases, HHS had finally determined and recouped $31,200,405 in April 1995, nearly three months before the effective date of the statute. Clearly, any application of the amendment to this recoupment would constitute an improper retroactive application of the statute and, thus, arbitrary and capricious conduct on the part of DSS.

(d) and (e), the statute in effect at the time the expenditures were incurred, regardless of when the disallowance was finally determined. Under the former scheme, DSS would reimburse social services districts for one half of those foster care expenditures not reimbursed by the Federal Government (*see*, Social Services Law § 153 [1] [d], [e]) and, as conceded by respondents, under the prior statute the two entities would equally share in any subsequently determined Federal disallowance.

In the absence of clear language demonstrating that the Legislature so intended, DSS should not be relieved of its statutory obligation to bear one half of the cost of the Federal disallowance by reliance on a statute enacted well over a decade after the expenditures at issue had been incurred. Said differently, DSS should not be permitted to avoid what would otherwise have been a statutory obligation to bear one half of the entire disallowance based simply on the timing of events— i.e., a 1996 settlement of a *portion* of the 1990 disallowance (*see*, n 2, *supra*), an event which postdated the statutory amendment—since the disallowance covers expenditures which were incurred long before the enactment of the annual cap on foster care expenditures.

Contrary to Supreme Court's determination, however, we are of the view that DSS and petitioner should share equally in the interest which accrued on the Federal disallowance, consistent with the statutory scheme of Social Services Law § 153 (1) (d) and (e). To this end, we find that petitioner is not being ordered to pay interest on a judgment (*see, e.g., Matter of Gross v Perales*, 133 AD2d 37, *affd* 72 NY2d 231); rather, the interest figure is a component of the $74 million Federal disallowance. In our view, inherent in DSS' statutory authority to recoup one half of the Federal disallowance from petitioner is the authority to also recoup one half of the interest.

Finally, we are unpersuaded by respondents' argument that 18 NYCRR 600.3 (c) (4) provides a rational basis upon which to deny the one-half reimbursement to petitioner because DSS failed to conduct an audit of its own to ascertain the overlap, if any, of State and Federal eligibility criteria and failed to substantiate in any way the applicability of this regulation by proof in the record. Moreover, since DSS did not rely on the substantive findings of the Federal audit as a basis for passing the entire disallowance onto petitioner—indeed, DSS attacked the Federal audit as defective and overly technical—we cannot consider this ground in evaluating the rationality of its deter-

mination (*see, Matter of Scanlan v Buffalo Pub. School Sys.*, 90 NY2d 662, 678).

Respondents' remaining contentions have been reviewed and rejected.

CREW III, J. P., WHITE, PETERS and GRAFFEO, JJ., concur.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as concluded that respondent State Department of Social Services lacked authority to recoup any interest from petitioner; it is declared that said respondent did have such authority; and, as so modified, affirmed.