OPINION OF THE COURT
Bellacosa, J.
This is a longstanding fiscal controversy between the State and City of New York. It devolves to which of these entities is ultimately responsible for bearing the cost of Federal recoupment of millions of dollars of child foster care aid that was the subject of Federal audits finding substantial case mismanagement by the City. Large sums of money were disallowed by the Federal Government relating to a period from 1983 to 1985.
The core issue is whether New York State Social Services Law § 153-i may be applied retroactively to authorize the State to recoup the challenged foster care expenditures from the City. In particular, this Court must decide whether: (1) monies returned by the State to the Federal Government in May 1995 may, in turn, be recouped from the City; and (2) the State may also recover from the City associated interest charges assessed by the Federal Government.
 We modify the Appellate Division order insofar as it found that Social Services Law § 153-i did not permit the State *470 to recover the full Federal disallowances from the City; we further modify the order to allow the State to recoup, as well, the interest penalty imposed; and, as modified, we affirm the order, as respectively appealed by the State and the City.
I.
Pursuant to title IV-E of the Social Security Act and the Federal Adoption Assistance and Child Welfare Reform Act of 1980 (42 USC §§ 670-679), States are granted Federal funds for a portion of their foster care expenses in providing for the care of qualifying foster children. New York’s State Department of Social Services (DSS) distributes its Federal funds to municipal social services districts, such as the City of New York. Local districts in New York State make the direct payments to their foster care providers using both their own appropriated revenues and the Federal funds, as distributed by and through the State. Local districts submit claims for reimbursement to State DSS, which reconciles the claims. If, eventually, the Federal Government disallows a claim for reimbursement, the previously advanced grant money must be recredited to the Federal treasury from the State funds available at the time of disallowance.
In 1988, the United States Department of Health and Human Services (HHS) audited the City’s foster care expenses incurred between October 1, 1983 and September 30, 1985. The auditors reviewed 300 sample cases and concluded that the City did not comply with various Federal eligibility requirements for approximately 186 cases. Thus, of the approximately $121 million in Federal title IV-E maintenance payments covered in the audit period, approximately $101.5 million, inclusive of administrative costs, were disallowed. The Federal Government sought recoupment of an adjusted $92,115,289 from the State. The sum reflected $64,123,732 in foster care payments and $27,991,567 in associated administrative costs.
The State engaged in a two-step appeal process with the HHS Departmental Appeals Board (DAB), in which the City took no part. The State challenged the authority of HHS to disallow maintenance payments under title IV-E, the statistical sampling method employed, and the method used to calculate the disallowance of administrative costs.
On the second step of the appeal, after DAB upheld the entire disallowance, the State challenged disallowances as to many of the individual sample cases. On 72 cases which the State did not contest, HHS issued a “negative grant award” in April *471 1995, and recouped $31,200,405 ($20,748,405 in principal, $10,452,000 in interest) by withholding payments otherwise due the State. However, by letter dated August 2, 1995, DAB stated that “the administrative decision on the 72 uncontested sample cases is not yet final since New York has raised questions as to how the amount recouped was calculated.”
In December 1996, HHS and DSS reached a settlement agreement: DSS would pay HHS $42,899,429 ($32,723,816 representing foster care monies and $10,175,613 in interest), in addition to the $31,200,405 already withheld. At this stage, DSS notified the City that it would seek to recoup the entire $74,099,834 from the City, to be deducted from appropriations the State would otherwise provide to the City.
The City sued the State in this CPLR article 78 proceeding, seeking annulment of the State’s recoupment efforts. Specifically, the City argued that, pursuant to Social Services Law § 153 (1) (d) and (e), as that statute provided at the time of the Federal audit and at the time the expenses were incurred, the State could recoup only half of the Federal disallowance (one half of $53,472,221) and none of the $20,627,613 in interest. The State argued that Social Services Law § 153-i, as enacted July 5, 1995, applied retroactively and required or at least authorized the State to recoup the Federal disallowance directly from the City, in full and with interest.
Supreme Court granted relief to the City, concluding that the State acted arbitrarily and capriciously. The trial court rejected retroactive application of Social Services Law § 153-i; declared that the State was entitled to only one half the total disallowance of $53,472,221; and held that DSS improperly recouped the $20,627,613 in interest penalties from the City.
The Appellate Division modified the judgment. The Appellate Division agreed with the trial court that the State was responsible for half the Federal disallowance because applying Social Services Law § 153-i to the case at hand would “constitute an impermissible retroactive application of the statute.” (252 AD2d 173, 176.) However, the court rejected the trial court’s decision with respect to the interest, and concluded that “inherent in DSS’ statutory authority to recoup one half of the Federal disallowance from petitioner is the authority to also recoup one half of the interest.” (Id., at 177.) This Court granted the State and City leave to appeal and cross appeal.
II.
Prior to 1995, the Social Services Law provided that the State would reimburse local social services districts for one *472 half of all foster care expenditures not reimbursed by the Federal Government (Social Services Law § 153 [1] [d], [e]). Expenditures were subject to the one-half reimbursement “only to the - extent of the annual appropriations therefor” (former Social Services Law § 153-e [1]). Effective July 1, 1995, the Legislature repealed Social Services Law § 153-e and substituted section 153-i. The new section limited reimbursement for foster care to the amount of the district’s fiscal year “block grant” allocation, as calculated by the State. Key to this case, Social Services Law § 153-i (8) also provided that the block grant to a district for any fiscal year would be reduced by any Federal or State disallowances taken against the district.
Social Services Law § 153-i is entitled, “[b]lock grant for family and children’s services.” It provides in subdivision 1 (a) that “[notwithstanding the provisions of this chapter or any other law to the contrary, eligible expenditures by a social services district for the provision and administration of the following family and children’s services that are provided in accordance with applicable state and federal law and regulations shall be subject to reimbursement with state funds only to the extent of annual appropriations to the state block grant for family and children’s services.”
Following the Appellate Division decision in this case, Social Services Law § 153-i (8) was amended by chapter 405, part C, section 3 of the Laws of 1999. As amended, the statute now provides:
“A social services district’s block grant apportionment shall reflect the state share of sanctions or disallowances taken against the district pursuant to this chapter or federal law. Notwithstanding any other provision of law, the state shall not be responsible for reimbursing a social services district for any portion of any state disallowance or sanction taken against the social services district, or any federal disallowance attributable to final federal agency decisions or to settlements made, on or after the date the family and children’s services block grant became effective for services set forth in subdivision one of this section, when such disallowance or sanction results from the failure of the social services district to comply with federal or state requirements, including, but not limited to, failure to document eligibility for the federal or state funds *473 in the case record-, provided, however, if the office of children and family services determines that a dis-allowance or sanction taken or made on or after the effective date of this subdivision results solely from the district following written instructions from the state regarding the filing of such claim or that any federal disallowance for services provided from between January first, nineteen hundred ninety-nine and May thirty-first nineteen hundred ninety-nine results solely from the late enactment of the state legislation implementing the federal adoption and safe families act, the state shall be solely responsible for the full amount of the disallowance or sanction. This provision shall be deemed to apply both prospectively and retroactively regardless of whether the disallowance or sanction is for services provided or claims made prior to or after July first, nineteen hundred ninety-five, the date the family and children’s services block grant became effective” (emphasis added).
The State argues that the 1999 amendment to Social Services Law § 153-i (8) commands a favorable result for the State. The State advocates that this Court reject the City’s contention that because $31,200,405 was recouped by the Federal Government in April 1995, that portion of the disallowance was a final Federal agency decision made before July 1, 1995 and, therefore, not subject to recoupment in any event. The City responds that the 1999 amendment does not apply in this case, because the “dispositive event” occurred prior to July 1, 1995. We agree with the State that the plain language of the amended statute makes it retroactively applicable to this case.
The amended statute definitively declares that Social Services Law § 153-i applies retroactively irrespective of whether the actions underlying the disallowance occurred prior to July 1, 1995. Under subdivision (8), “[n]otwithstanding any other provision of law,” the State is not responsible for reimbursing the City for any portion of any Federal disallowance attributable to final Federal agency decisions or to settlements made after July 1, 1995 when such disallowance or sanction results from the City’s failure to comply with the Federal requirements. That is the crux of the underlying fiscal tension; and it supports the State’s legal contention.
*474 III.
Because the amendment applies, the result here turns on whether the final settlement between the State and the Federal agency occurred after July 1, 1995, the date to which the amendment retroactively pertains. The State contends that, at the earliest, the settlement with HHS occurred on December 16, 1996. The City argues that the December 16, 1996 settlement was merely ministerial and that the final adjudication of the dispute occurred no later than September 30, 1992, the date of DAB’s decision on the first stage of the State’s appeal.
The complex, multi-tiered bureaucratic record more reliably supports the State’s position that the final Federal agency decision or settlement, needed to trigger Social Services Law § 153-i (8), occurred on December 16, 1996. That is the date of the final settlement. Before that point, every facet of the disagreement over disallowance between DSS and HHS, whether recouped by HHS prior to the settlement or not, was still in some state of irresolution and subject to further layers of review and dispute.
For example, DSS, by letter dated May 19, 1995, expressly challenged the amount and calculations of the recoupment and interest on the 72 uncontested cases, and requested that the whole matter be re-opened. By a letter ruling dated August 2, 1995, DAB granted the request in part. DAB also concluded that the Administration for Children and Families was not precluded from recovering payments for those amounts which the State did not submit timely offers of proof. DAB noted, however, that “in finding that New York did not timely dispute the findings in the 72 cases, we do not imply that New York may not dispute in court the Board’s decision * * * on the threshold legal issues, to the extent that it affects these cases.” DAB expressly recognized that “the administrative decision on the 72 uncontested sample cases is not yet final since New York has raised questions as to how the amount recouped was calculated. The Board will consider at a later date whether it should issue one decision on both the calculation of the amount pertaining to the 72 cases and any remaining issues as to the cases for which New York submitted offers of proof.” Indeed, DAB explicitly concluded that the case “should be re-opened to permit New York to contest the calculation of this amount.”
Furthermore, in a related ruling by DAB on its jurisdiction to properly assess the interest on the funds recouped in May 1995 based on the April 1995 negative grant award, DAB *475 stated that the interest charged could be adjusted “if the Board later determines that ACF improperly calculated the amount of the payments attributable to the sample cases in question.” Thus, the State’s challenge to the assessment of interest likewise was undecided as of July 1, 1995, and was still in dispute prior to the 1996 settlement.
While the City points out that the sum ultimately recouped from the State was later held to be a properly determined amount, that fact does not alter the legal prerequisite that drives the analysis and outcome here. The April 1995 recoupment package was still open for some reconsideration and was therefore not legally or technically final, as DAB itself acknowledged. Thus, the approximately $31 million payment was not a “final federal decision or settlement” as required by Social Services Law § 153-i (1) (a) and (8). Rather, this matter may not be deemed finally settled before July 1, 1995. As a consequence, the State turns out to be right that the City should be held accountable for the entire amount recouped from the State by HHS.
IV.
The City, on its cross appeal, also argues that the State lacked the authority to recoup interest which accrued during the six-year appeal process. Generally, “[b]efore a court can determine whether an agency acted reasonably in taking a particular action it must find that the agency had authority to act in the first instance” (see, Mancini v McLaughlin, 54 NY2d 860, 862).
Social Services Law § 153-i (8) declares that the “block grant apportionment shall reflect the state share of sanctions or disallowances taken against the district pursuant to this chapter or federal law.” This section further provides that “the state shall not be responsible for reimbursing a social services district for any portion of any state disallowance or. sanction taken against the social services district, or any federal disallowance attributable to final federal agency decisions or to settlements made, on or after the date the family and children’s services block grant became effective” (id. [emphasis added]). Thus, Social Services Law § 153-i gives the State the authority to recoup any disallowance based on a final agency decision or settlement. Because the settlement in this case factors in both the interest and administrative costs on the foster care maintenance fees, Social Services Law § 153-i justifiably authorizes the State to recoup from the City the total amount of the settlement, including its interest component.
*476 To the extent that Social Services Law § 153-i (8) provides that the block grant apportionment must reflect any disallowances pursuant to that statute or under Federal law, the Federal regulations also supply further support for the State to recoup the imposed interest charges from the City. The regulations of HHS, dealing with the collection of claims, direct that interest will accrue on all debts from the date the party has notice of the debt (45 CFR 30.13 [a] [1]). The regulations require that when administrative costs are assessed on debts (45 CFR 30.13 [b]), they also set the range and circumstances for calculating the interest on such debts (45 CFR 30.14 [a]). Thus, any Federal disallowance is necessarily going to have statutorily imposed interest accompanying it, with the interest treated as part of its disallowance under Federal law. Reading the Federal regulations and Social Services Law § 153-i (8) together, then, we conclude that the State enjoys the authority also to recoup the interest amount from the City.
We have examined all other contentions and conclude that they do not alter or affect the outcome we reach in each aspect of this litigation. Thus, the State is entitled to recoup from the City the entire amount of the Federal disallowance, including its interest component.
Accordingly, the Appellate Division order should be modified in both respects as set forth in this opinion, without costs and, as so modified, affirmed.
Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
Order modified, etc.