People v Payne (2004 NY Slip Op 50010(U))

[*1]

People v Payne

2004 NY Slip Op 50010(U)

Decided on January 6, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 6, 2004

Supreme Court, Kings County
 People of the State of New York, Plaintiff,
against
Marc Payne, Defendant.
Indictment No. 6021/01

John M. Leventhal, J.
The defendant moves to suppress his statements made on July 19, 2001.[FN1]
In deciding this motion, the court has considered the hearing conducted on December 8, 2003. Based on the credible evidence, the court makes the following findings of facts and conclusions of law.
Facts
On July 1, 2001, Detective Richard Gregory, an officer employed by the Essex County (New Jersey) prosecutor's office, was called to the Maplewood Reservation at South Mountain, New Jersey. There, he discovered the decomposed body of a female wrapped in a plastic bag and stuffed in a trunk. Det. Gregory broadcast to the neighboring areas a description of the deceased female.
On July 5, 2001, Det. Gregory went to One Police Plaza in New York City in order to see if the fingerprints of the unidentified female matched any fingerprints of a known person in New York. The results were negative. That day, he received a telephone call from Det. John Michaud of the 71st precinct Brooklyn, NY informing him that the description matched that of a reported missing female named Brenda Miller. The defendant had previously reported Ms. Miller as missing.[FN2]
Further work by the New Jersey coroner's office led to a better set of fingerprints from the body of the female. On July 16, 2001, Det. Gregory returned to One Police Plaza to match the newly obtained fingerprints to any fingerprints on file. This time the fingerprints matched that of Brenda Miller. The detective then contacted Det. Michaud and informed him of the match. Det. Gregory then went to the 71st Precinct to review Det. Michaud's paperwork on the missing person case.
Thereafter, Det. Gregory conducted a motor vehicle check of cars registered in New Jersey. He discovered that defendant's parents had two vehicles registered to them.
[*2]
On July 18, 2001, Det. Gregory interviewed the father of the defendant, but the defendant's step mother was not home. Later that day, the defendant's step mother met with Det. Gregory at his office. She informed the detective that the defendant had borrowed a 1995 Nissan Pathfinder (SUV) on June 30, 2001 and returned the vehicle on July 1, 2001 at about 3:00 p.m. Det. Gregory then drove the defendant's step mother home. During the ride, the detective asked the step mother if there was anything unusual about the SUV after it was returned to the step mother by the defendant. The step mother replied, "Funny that you should ask me that, my daughter on our way to the mall said to me, 'Mommy the back of the truck stinks.'"[FN3] The detective asked the step mother for permission to conduct certain tests on the vehicle. The step mother consented. That day the detective called the Bergen County sheriff's office for a cadaver dog.[FN4]
On July 19, 2001, Det. Gregory received a call from the defendant complaining about the fact that the detective had talked to his parents instead of to him. Arrangements were then made to interview the defendant that day. At about 2:30 p.m., Det. Gregory and Det. Michaud went to the defendant's Brooklyn home. The detectives informed the defendant that they had found the body of Brenda Miller. The defendant then exited the room, made a telephone call and started to throw things. Det. Gregory then informed the defendant that, "we needed to talk to him about the situation down at the office."[FN5] The defendant voluntarily consented to accompany the officers to the precinct.
During the ride to the precinct, the defendant was not handcuffed nor questioned. At about 3:30 p.m., the detectives arrived at the 71st Precinct and placed the defendant in the interview room. Both detectives then began questioning the defendant. At different times, the defendant was able to use his cell phone and call numerous persons. He was not hand cuffed at this time nor was he ever placed in a prison cell. Sometime after 6:00 p.m., Det. Gregory received a phone call from the Bergen County sheriff's office informing him that the cadaver dog had detected the scent of a dead body in the SUV. Both detectives then "laid it on him (the defendant)."[FN6] Det. Gregory questioned the defendant about alleged fluids of Ms. Miller found in the SUV and Det. Michaud asked the defendant about certain items found near or in the trunk where the body was found.[FN7] Initially, the defendant remained silent. Det. Michaud then was called to his supervisor's office. After further questioning by Det. Gregory, the defendant asked, "what's going to happen to my son?" The detective replied everything will be fine with your son. Det. Michaud returned to the interview but was asked to leave by the defendant so he could talk with Det. Gregory in private. The defendant made incriminating statements. Det. Gregory then informed Det. Michaud of the conversation. At [*3]about 6:40 p.m., Det. Michaud returned to the interview room and for the first time gave the defendant his Miranda warnings. The defendant made multiple confessions. At about 10:00 p.m., the defendant made a videotaped statement to an Assistant District Attorney.[FN8]
At no time during the questioning did the defendant ask to leave nor was he ever informed that he was free to leave.
Law and Burdens
The People have the burden of showing the voluntariness of the confession or statement beyond a reasonable doubt (People v Rosa, 65 NY2d 380, 386; People v Anderson, 42 NY2d 35, 38; People v Huntley, 15 NY2d 72, 78). Prior to interrogating a person in the custody of the police, the police must administer Miranda warnings (Miranda v Arizona, 384 US 436). A person is deemed to be in custody when a reasonable person in defendant's position, innocent of any crime, would have thought that he or she is in custody (People v Yukl, 25 NY2d 585, 589; see Berkemer v McCarty, 468 US 420).[FN9] The test is an objective one (Stansbury v California, 511 US 318, 323; People v Hofmann, 238 AD2d 716, 719). The subjective beliefs of either the defendant (Stansbury, 511 US at 323; Matter of Kwok T, 43 NY2d 213, 220; People v Mosley, 196 AD2d 893, 893) or the interrogating police officer or officers (Stansbury, 511 US at 323; People v Finkle, 192 AD2d 783, 786; People v Bell, 182 AD2d 858, 859) are irrelevant to the determination of whether the defendant was in custody for Miranda purposes.
The party bearing the burden and the standard of proof required to show custody or lack of custody has not been definitively determined in New York (see Brunetti, New York Confessions, First Edition, ch 9 [B] [6] [b] at 328-329 [J & B Gould Publications Inc., 2001]). In People v Alls (83 NY2d 94), Judge Simons in dissent stated that he thinks that "the majority improperly suggests that the burden is on the People to establish that the defendant was not in custody for purposes of Miranda" (at 113, emphasis supplied). The dissent [FN10] cited page 102 of the Alls decision for the proposition that the majority "suggests" that the burden of proof is on the People. The court has examined that page as well as the entire decision and does not agree with the dissent that the majority "suggests" that the party that has the burden of proof to show custody is the prosecution. In any event, a suggestion is not a holding of a case and is not binding on a lower court (see People Bethea, 67 NY2d 364, 368 n*).
Further, the Alls case is distinguishable from the ordinary case. In Alls, the defendant was an inmate in a state correctional facility. While serving a jail sentence in the facility, the defendant allegedly sexually assaulted another inmate. The police interviewed the defendant in the correctional facility without administering any Miranda warnings. It was clear from the facts of the case that Alls [*4]was not free to leave the correctional facility at the time he was being interrogated by the police. Thus, in Alls there was a certain degree of custody merely because of his status as an inmate. If the majority in Alls "suggests" that the burden of proof on the custody issue is on the People, this is because being incarcerated is by its very nature a form of custody. Thus, it was not unreasonable to place the burden of proof regarding the custody issue in Alls on the People. Alls is thus distinguishable from the present case and the typical custodial situation.
In People v Morales (281 AD2d 182), the Appellate Division, First Department, refused to decide which party bears the burden of proof on the custody issue for Miranda purposes. Instead, the court found lack of custody regardless of the burden of proof. The court did cite Alls when indicating its doubt as to who bears the burden of proof.
Nisi prius courts are divided on the issue. The courts in People v DiLahita (n.o.r., NYLJ Oct 11, 1991, at 30 col 3, District Court Nassau, Lally, J.) and People v Knight (n.o.r. NYLJ Dec 15, 1992, at 22 col 3, Supreme Court, New York County, Yates, J.) hold that the People have the burden of showing that the defendant was not in custody beyond a reasonable doubt. The DiLahita court does not cite any case to support this proposition. Knight cites People v Gonzalez (80 NY2d 883), People v Huntley (15 NY2d 72, 78) and People v Tirado (137 AD2d 928, 929). A review of those cases cited by Knight indicates that none of the cases deal with the issue of which party has the burden of proof on the custody issue. The cases cited all deal with the burden of proving voluntariness, not custody. Knight also cited People v Flores (n.o.r, NYLJ Oct 19, 1981, App Term, First Department). The Flores case does not discuss the issue of burden of proof. The Knight court gleaned from the fact that the Flores court suppressed a confession because there was no evidence on the custody issue that the Flores court holds that the burden of proof was on the People.[FN11]
The court in People v Holder (n.o.r., NYLJ September 20, 1991, at 27 col 1, Supreme Court Kings County, Gerges, J.) held that the defendant had the burden of proving custody by a preponderance of the evidence. Holder gave four reasons for its determination. The first reason given by the court was that all federal courts and state courts that had discussed the issue held that the burden of proof as to custody is on the defendant (see lengthy citations).[FN12] This court would add Commonwealth v Girouard (436 Mass 657, 665, 766 NE2d 873, 880) and State v LeClaire (2003 VT 4, 819 A2d 719, 725) to the list of citations in Holder of out-of-state cases holding that the defendant bears the burden of proving by a preponderance of the evidence that the defendant was in custody for the purposes of the Miranda warnings. The second reason supplied by the Holder court was that custody is a condition precedent to Miranda warnings.[FN13] The Holder court argued that the party seeking relief generally has the burden of proving a condition precedent to the entitlement of relief. The third reason provided in Holder is that the legal criteria for determining custody requires a court to view the situation from a person in defendant's situation. The Holder court [*5]grounded its decision on the fact that the person in the best position to testify about the defendant's situation is the defendant. The fourth reason proffered by the Holder court is that the defendant has immunity for any testimony that he gives at a suppression hearing (see Simmons v United States, 390 US 377, 394).[FN14] Thus, there is no reason why the burden should not be on the defendant.
This court agrees with the Holder reasoning. The United States Supreme Court has recently held that the Miranda warnings are an integral part of the Federal Constitution and not merely a prophylactic rule (Dickerson v United States, 530 US 428, 436-441). Since Miranda warnings are part of Federal Constitutional law, the federal standards and rules should apply (see Commonwealth v Larkin, 429 Mass 426, 432, 708 NE2d 674, 679). As pointed out by Holder, the United States Supreme Court and all United States Courts of Appeals have placed the burden on the defendant to prove custody.
The court knows of no New York case that establishes that the Miranda warnings are part of the New York State Constitution. It is important to note that while a State can grant a defendant greater rights under its own constitution, a State may not expand the Federal Constitution (Arkansas v Sullivan, 532 US 769, 762; Oregon v Hass, 420 US 714, 719). Thus in order to hold that the burden of proof as to custody for Miranda purposes is something other than that announced by the United States Supreme Court, this court would have to interpret the New York State Constitution to so require. This court declines to do so here.
Under the New York State Constitution, it is the Court of Appeals which has the rule making function (People v Keta, 165 AD2d 172, 177, rvsd on other grounds 94 NY2d 474). Thus, lower New York courts should refrain from creating additional New York State Constitutional rights (id., at 177-178; Hynes v Tomei, 237 AD2d 52, 61, rvsd on other grounds 92 NY2d 613; People v Janick, 186 Misc 2d 1, 7; People v Lucas, 183 Misc 2d 639, 644; People v Arroyo, 178 Misc 2d 653, 654).
Since neither party has briefed the issue [FN15] and since this court has not been supplied with any reason for departing from the Federal Constitution, the court declines to do so.
The Holder reasoning is consistent with the decision in People v Mendoza (82 NY2d 415). In Mendoza, the court instructed lower courts that in determining the legal sufficiency of motions to suppress, the court should consider the amount of information the defendant possesses at the time of making the motion. Similarly, in determining a motion to suppress after hearing, the court should also consider the information possessed by the defendant. The defendant is the best party to testify as to what a person in his situation knew and observed, critical elements in determinating whether the defendant was in custody.
The Holder rationale is supported by the reasoning in Morales (281 AD2d at 182), where the court held that the lower court was correct in refusing to reopen a Huntley hearing to permit an independent witness to testify that the defendant was in handcuffs. The court found that during the suppression hearing the defendant undoubtly knew that he was in handcuffs and could have so [*6]testified at the original hearing. Thus, the appellate court held that where a defendant has personal knowledge, the court can consider the fact that the defendant could testify in making a determination on a motion to reopen a hearing.
This court holds that a defendant has the burden of proving that he or she was in custody at the time of questioning.
In applying the rules involving custody issues for Miranda purposes, the courts have set forth certain factors to be examined. In People v Bailey (140 AD2d 356, 358), the court held:

"The factors to be weighed in determining whether a given individual was in police custody include the amount of time he spent with the police (see, e.g., People v Anderson, 42 NY2d 35), whether his freedom of action was restricted in any significant manner by the authorities (see, People v Rodney P., 21 NY2d 1), the location at and the atmosphere under which he was questioned (see, People v Yukl, supra), the degree of cooperation which he exhibited (see, e.g., People v Torres, 97 AD2d 802), whether he was apprised of his constitutional rights (see, People v Oates, 104 AD2d 907), and whether the questioning was investigatory or accusatory in nature (see, e.g., People v Johnson, 91 AD2d 327, affd 61 NY2d 932)." (see also Hofmann, 238 AD2d at 719; People v Coggins, 234 AD2d 469, 470; People v Petrovich, 202 AD2d 523, 523-524)
The United States Circuit Court of Appeals, Second Circuit, has set forth the following factors (Tankleff v Senkowski, 135 F3d 235, 243-244):

"Courts have looked at various factors in making this determination. These include: whether a suspect is or is not told that she is free to leave, see Campaneria v Reid, 891 F.2d 1014, 1021 n.1 (2d Cir. 1989); the location and atmosphere of the interrogation, see Oregon v Mathiason, 429 U.S. 492, 494-95, 50 L. Ed. 2d 714, 97 S. Ct. 711 (1977); the language and tone used by the police, see United States v Guarno, 819 F.2d 28, 31-32 (2d Cir. 1987); whether the suspect is searched, frisked, or patted down, see United States v Wilson, 901 F. Supp. 172, 175 (S.D.N.Y. 1995); and the length of the interrogation, see Berkemer, 468 U.S. at 437-38."
These factors are to be considered in determining the custody issue for Miranda purposes but none are, in and of themselves, dispositive. The court must look to the totality of the circumstances (Stansbury, 511 US at 322).
Application
In this case, it is clear to this court beyond a reasonable doubt that the defendant was not in custody until he was informed that the cadaver dog had determined that a dead body had been in the SUV that the defendant had been driving. The issue of whether the defendant was in custody between this time and the issuance of the Miranda warnings is a more difficult issue.
In determining the custody issue for this period of time, the court considers the following [*7]factors:
1. The defendant was told that he "needed" to talk to the officer at the police station. The word "needed" indicates a certain compulsion and favors a finding of custody.
2. Despite the words "needed," the defendant voluntarily accompanied the police to the station house. This factor weighs in favor of a finding of lack of custody.
3. The defendant was not handcuffed or questioned in the police vehicle. This is a factor that favors a determination of lack of custody.
4. The defendant had always been cooperative until the statement about the cadaver dog. This factor militates against a finding of custody.
5. The interrogation was conducted in a police station. This factor is not determinative, but weighs in favor of a finding of custody.
6. The detective described the interrogation after the information about the cadaver dog was as "we laid it" on him. Det. Michaud's police report (admitted into evidence) also indicates an intensive interrogation of the defendant. This indicates that investigation had changed from investigatory to accusatory. This factor weighs in favor of a finding of custody.
7. When informed about the result of the cadaver dog finding, the defendant remained silent. After further accusatory interrogation, the defendant asked what would happen to his child. This indicates to this court that the defendant was thinking that he was not leaving the precinct at that point. As stated earlier the defendant's subjective belief is irrelevant. Nonetheless, the defendant's reaction is relevant to the issue of the atmosphere and intensity of the interrogation. This court unfortunately does not have a videotape or an audiotape of the interrogation and must glean the facts from the logical inference from the testimony. This factor favors a finding of custody.
8. Despite being told that the cadaver dog had determined that there was a dead body in the SUV, the defendant felt free to request and the request was granted that Det. Michaud leave the room. This factor favors a determination of lack of custody.
9. The defendant was never informed that he was free to leave at anytime. This factor weighs in favor of finding of custody.
10. The defendant was permitted to make phone calls on his cellular phone throughout the period of questioning until the Miranda warnings were given. This factor indicates that the defendant was not in custody.
11. The defendant was never handcuffed or frisked during the entire questioning period. This factor indicates lack of custody.
12. The interrogation, before the giving of the Miranda warnings, lasted almost three hours. This is a factor favors a finding of custody.
The court looks to the totality of the above factors and not the number of factors favorable to one finding or another. The court holds that the defendant has failed to prove by a preponderance of the evidence that he was in custody before the Miranda warnings were given him.
So that the record is complete and in the event that an appellate court should determine that the People have the burden of proof beyond a reasonable doubt, the court finds that the People have failed to meet such a burden. If the burden is upon the People merely to go forward with proof of lack of custody, the court finds that the People have met that burden.
After the Miranda warnings were given, the defendant knowingly, intelligently and voluntarily waived the rights.
[*8]
The motion to suppress the defendant's statement made on July 19, 2001 is denied.
This constitutes the decision and order of the court.
E N T E R ,
J. S. C.
Decision Date: January 06, 2004
Footnotes

Footnote 1: The defendant does not seek to suppress any statements made prior thereto.

Footnote 2: At the hearing, there was no testimony as to when the defendant had reported Ms. Miller missing. The court file indicates that a missing person report was filed on July 2, 2001. 

Footnote 3: Hearing minutes (HM) p. 28 lines 12-14.

Footnote 4: A cadaver dog is a dog who can smell whether a dead body was ever at a particular location.

Footnote 5: No explanation was offered why the conversation could not have been held at the defendant's residence.

Footnote 6: HM p.38 line 6

Footnote 7: Utensils identical in design to those found at the location where the body was discovered were observed by the detectives in the defendant's house at the time that they went to question him.

Footnote 8: The amount of time between the defendant's confessions and the videotape is unknown.

Footnote 9: The United States Supreme Court generally leaves out the phrase "innocent of any crime." Nonetheless, as pointed out by the Court in Florida v Bostic (501 US 429, 438), the concept of reasonable person "presupposes an innocent person" (see also Florida v Royer, 460 US 491, 519 n 4). Thus, the New York test is identical to that as articulated by the United States Supreme Court.

Footnote 10: Judge Bellacosa concurred with J. Simons.

Footnote 11: This is similar to Judge Simons' dissent in Alls that the majority "suggests" that the People have burden. The majority in Alls did indicate that there was no evidence on custody. Also cited was the then 1 CJI (NY) 11.02, pp. 661-665 .

Footnote 12: The cases all support this proposition.

Footnote 13: The cases cited by Holder all support this proposition, as do the out-of-state cases.

Footnote 14: This court has added the page number to the citation. The grant of immunity to a defendant who testifies at a suppression hearing was the underlying rationale for the Court's decision in United States v Salvucci (448 US 83).

Footnote 15: Both parties have relied on the record.